**WEEKS MARINE, INC.,
Appellant/Cross–
Appellee,**

v.

**Jose J. SALINAS, Appellee/Cross–
Appellant.**

**No. 04–05–00577–CV.**

Court of Appeals of Texas,
San Antonio.

Feb. 7, 2007.

Frank E. Perez, Perez & Piette, P.C., Brownsville, for appellant.

John C. Schwambach, Jr., John Stevenson & Associates, Houston, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice CATHERINE STONE, Justice SARAH B. DUNCAN, Justice.[1]

---

1. The Honorable Sarah B. Duncan, who was assigned this case originally, not participating.

## OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

Weeks Marine, Inc. appeals the trial court's judgment awarding damages to Jose J. Salinas for injuries he sustained in the course and scope of his employment. We reverse that portion of the trial court's judgment reducing the amount of damages awarded by the jury by thirty percent and render judgment that Salinas is entitled to recover $1,585,000.00 in compensatory damages and $87,000.00 in cure. We affirm the remainder of the trial court's judgment.

### BACKGROUND

Salinas was rehired by Weeks Marine, Inc. on July 3, 2003, as a mate assigned to the dredge M/V BTD II.[2] A short time after being assigned to the M/V BTD II, the dredge was moved from a project in the Mississippi River to Weeks Marine's repair facility in Houma, Louisiana. At that time, Salinas was primarily engaged in yard work; however, Captain Clyde J. Wyble, Sr., who was the captain of the M/V BTD II, testified that some of Salinas's work was always associated with the M/V BTD II. While the M/V BTD II was at the repair facility, Salinas and the other members of the crew continued to sleep and eat on the M/V BTD II.

On October 14, 2003, Salinas was injured when he was carrying two batteries from a large truck to the M/V BTD II to recharge. The batteries were estimated to weigh approximately 45 pounds each. Salinas had to carry the batteries from the yard across two gangways. The first gangway extended from the yard to a barge, and the second gangway extended from the barge to the M/V BTD II. Salinas testified that the step down from the second gangway to the M/V BTD II was between a foot and a foot and a half. Salinas testified that he injured his back as he stepped from the gangway onto the M/V BTD II carrying the first battery. Salinas completed his shift and reported the injury to Captain Wyble the following day. Salinas had not been released for duty when the M/V BTD II returned to the Mississippi River in late October or early November of 2003. Salinas testified that Captain Wyble told him that he would have gone with the M/V BTD II as a mate if he had been released for work.

A jury found that Salinas was a seaman acting in the course and scope of his employment when he was injured. The jury also found that the negligence of Weeks Marine was a legal cause of Salinas's injury, and seventy percent of the negligence was attributable to Weeks Marine. The jury further found that the M/V BTD II was unseaworthy on the date of the incident, and the unseaworthy condition was a proximate cause of the occurrence or injury. Based on the jury's findings, the trial court awarded Salinas $1,109,500.00 in compensatory damages and $87,000.00 in cure.

### JURISDICTION

■ Weeks Marine asserts that this court "may not" have jurisdiction to consider the appeal because the judgment did not dispose of Atlantic Sounding, a second defendant. Because the judgment was entered after a trial on the merits and no order for a separate trial of issues was entered, we presume that the judgment is final for purposes of appeal; therefore, we have jurisdiction to consider this appeal.

---

**2.** The M/V BTD II dredge was a sand dredge that removed sand from the floor of a body of water and pumped the sand through pipes to another location for various purposes, including the restoration of beaches, the deepening of ship channels, and the refilling of sand pits.

*See Moritz v. Preiss,* 121 S.W.3d 715, 719–20 (Tex.2003); *N.E. Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 897 (Tex.1966).

#### PRESERVATION BY MOTION FOR NEW TRIAL

 A motion for new trial is a prerequisite to the following complaints on appeal: (1) a complaint of factual insufficiency of the evidence to support a jury finding; and (2) a complaint of inadequacy or excessiveness of the damages found by the jury. TEX.R. CIV. P. 324(b). A party may also preserve a legal sufficiency complaint by raising it in a motion for new trial. *Cecil v. Smith,* 804 S.W.2d 509, 510–11 (Tex.1991); *Halim v. Ramchandani,* 203 S.W.3d 482, 487 (Tex.App.-Houston [14th Dist.] 2006, no pet.); *Hutchison v. Pharris,* 158 S.W.3d 554, 562 (Tex.App.-Fort Worth 2005, no pet.). When a party timely files a motion for new trial but fails to pay the filing fee, the trial court is not required to consider it. *Garza v. Garcia,* 137 S.W.3d 36, 38 (Tex.2004). Under those circumstances, any complaint made in the motion for new trial has not been properly made to the trial court and does not preserve anything for appellate review. *Id.*

In this case, Weeks Marine filed a motion for new trial on June 24, 2005, which was overruled by operation of law on August 10, 2005. Weeks Marine did not pay the filing fee until May 11, 2006, after Salinas filed his brief noting the deficiency. Although the filing fee was not timely paid, the trial court held a hearing on the motion for new trial thereby considering it. *See Kvanvig v. Garcia,* 928 S.W.2d 777, 779 (Tex.App.-Corpus Christi 1996, no writ) (noting trial court has discretion to consider and rule on motion for new trial from the time it is tendered to the clerk and "conditionally filed"). This fact makes the underlying case distinguishable from *Garza,* and the issue then becomes wheth-er the trial court's act in holding the hearing on the motion resulted in error being preserved despite: (1) the failure to pay the filing fee while the trial court had plenary jurisdiction; and (2) the fact that the motion was overruled by operation of law. *See Spellman v. Hoang,* 887 S.W.2d 480, 482 (Tex.App.-San Antonio 1994, no writ) (noting hearing and ruling on motion for new trial before filing fee was paid may have been of no effect). For purposes of this appeal, we will assume, without deciding, that the motion for new trial was sufficient to preserve error as to the issues properly presented in the motion.

#### STANDARD OF REVIEW

 The Jones Act provides a cause of action for maritime workers injured by an employer's negligence. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 405–06 (Tex.1998). When a state court hears an admiralty case, that court occupies essentially the same position occupied by a federal court sitting in diversity: the state court must apply substantive federal maritime law but follow state procedure. *Id.* at 406. Under the Federal Employers' Liability Act (FELA), a related statute, the causation burden is not the common law proximate cause standard. *Id.* Rather, the causation burden is "whether the proof justifies with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury for which the claimant seeks damages." *Id.* This burden has been termed "featherweight." *Id.* The Jones Act expressly incorporates FELA and the case law developing that statute. *Id.* Thus, the causation standard under the Jones Act is the same as that under FELA. *Id.*

 Texas courts have long recognized that in addition to the burden of proof being less stringent, the standard of appellate review in a Jones Act case is also

less stringent than under the common law. *Id.* As with the law on causation, FELA's standard of appellate review applies in Jones Act cases. *Id.* Thus, the purpose of the Jones Act standard of review is to vest the jury with complete discretion on factual issues about liability. *Id.* Once the appellate court determines that some evidence about which reasonable minds could differ supports the verdict, the appellate court's review is complete. *Id.* Essentially, a Texas court of appeals may not conduct a traditional factual sufficiency review of a jury's liability finding under the Texas "weight and preponderance" standard. *Id.* Rather, courts of appeals must apply the less stringent federal standard of review. *Id.*

 Texas courts of appeal have the power to review excessiveness of damages and to order remittitur in FELA actions and, by implication, in Jones Act cases as well. *Id.* The standard of review for an excessive damages complaint is factual sufficiency of the evidence. *Id.* When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Id.* at 406–07. A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.* at 407. The court of appeals is not a fact finder and, therefore, may not pass upon the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Id.*

## SEAMAN

 Weeks Marine challenges the sufficiency of the evidence to support the jury's finding that Salinas was a seaman. To be considered a seaman: (1) the employee's duties must contribute to the function of the vessel or to the accomplishment of its mission; and (2) the employee must have a connection to a vessel in navigation that is substantial in terms of both its duration and its nature and regularly exposes the employee to the perils of the sea. *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554–55, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997); *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). Employees who owe their allegiance to a vessel and not solely to a land-based employer are seaman. *Chandris*, 515 U.S. at 359, 115 S.Ct. 2172. Seaman do not lose their status as seaman when the course of their service to a vessel takes them ashore. *Id.* at 361, 115 S.Ct. 2172. "In evaluating the employment-related connection of a maritime worker to a vessel in navigation, courts should not employ a 'snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence." *Id.* at 363, 115 S.Ct. 2172. "[T]he ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id.* at 370, 115 S.Ct. 2172.

The evidence in this case establishes that Salinas was hired to work as a mate on the dredge M/V BTD II. Upon being re-hired, Salinas worked off-shore as a mate assisting the dredge in its operations. Approximately twenty days after Salinas was re-hired, the dredge was brought to the Houma yard for repair. Salinas continued to eat and sleep on the dredge while it was at the yard.

Although Tom Langan, the risk manager for Weeks Marine, testified that Salinas was re-assigned to the Louisiana pipeline project while at the yard, Captain Wyble testified that he would never assign Sali-

nas to do strictly yard work. Instead, Salinas would always be doing some work associated with the dredge. Captain Wyble further testified that, in general, when the crew was not operating the dredge M/V BTD II, they were transferred to the dredge Venture. The M/V BTD II spent approximately six months off-shore, while the Venture spent approximately 9–10 months off-shore. Robert Savoie, a project manager for Weeks Marine, also testified that when a dredge is sent to the Houma yard for repairs and maintenance, the crew typically stays with the vessel. Salinas also testified that most of the work he performed while at the Houma yard was for the M/V BTD II dredge. Salinas testified that when the M/V BTD II dredge left the Houma yard a few weeks after his injury, Captain Wyble said Salinas would have gone with the dredge if Salinas had his release.

The personnel records show that Salinas was re-hired as a mate for a dredge and performed the work of a seaman as a mate until the dredge was taken to the yard for repair. Weeks Marine relies heavily on the statements in *Chandris, Inc.* that note that an employee's seaman status may change if his basic assignment changes. However, both Captain Wyble and Salinas testified that Salinas's basic assignment did not change. Salinas continued to perform work that would contribute to the function of the dredge by repairing it. Furthermore, Captain Wyble acknowledged that Salinas would have been taken along on the dredge as a mate if he had been released to return to duty when the dredge left the yard toward the end of October or beginning of November of 2003.

In this case, Salinas's connection to the dredge did not change when it was docked at the yard. Moreover, a vessel does not cease to be a vessel when she is not voyaging but is at dockside undergoing repairs, particularly when the repairs last a relatively short period of time such as six months. *Chandris, Inc.* 515 U.S. at 373–75, 115 S.Ct. 2172. Accordingly, the evidence is sufficient to support the jury's finding that Salinas was a seaman.

### CHARGE ERROR

Weeks Marine contends that the trial court erred in refusing its requested jury instruction one and overruling its supplemental objection number one to the jury charge. The standard for review for charge error is abuse of discretion. *Texas Dep't of Human Servs. v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990).

The jury charge contains three pages of definitions and instruction relating to the question of Salinas's seaman status. The charge given regarding seaman status is verbatim from the Fifth Circuit's Pattern Jury Charge. The charge contains the recommended paragraph from the pattern jury charge to be included if evidence is admitted regarding a change in work assignment. The objection and instruction requested by Weeks Marine sought to embellish on the language in the charge relating to a change in work assignment. Well-settled jury charge definitions and pattern jury charges should not "be embellished with addendum." *Lemos v. Montez,* 680 S.W.2d 798, 801 (Tex.1984). The trial court did not abuse its discretion in refusing the requested instruction and overruling the supplemental objection.

### FUTURE ECONOMIC LOSS

Weeks Marine challenges the sufficiency of the evidence to support the jury's finding that Salinas suffered $1,500,000.00 in future economic loss. The jury generally has broad discretion to award damages within the range of evidence presented at trial. *Gulf States Util-*

*ities, Co. v. Low,* 79 S.W.3d 561, 566 (Tex. 2002); *Vela v. Wagner & Brown, Ltd.,* 203 S.W.3d 37, 49 (Tex.App.-San Antonio 2006, no pet.). A jury is entitled to disbelieve or discount any part of an expert's testimony even though the basis of the jury's specific calculation cannot be determined from the record. *Vela,* 203 S.W.3d at 49. A jury is entitled to make credibility determinations and weigh competing expert testimony and the variables and assumptions upon which that testimony is based. *Id.* at 51.

Viola Gonzalez Lopez, a vocational rehabilitation counselor, testified that the U.S. Department of Labor classifies jobs according to physical demands. Lopez categorized Salinas's prior employment with Weeks Marine as heavy work. When Lopez interviewed Salinas, Salinas reported that he continued to have low back pain and pain or numbness in his left leg even though the surgery had helped. Salinas also reported that he could lift about ten pounds, his back would start to hurt if he sat, stood, or walked more than about an hour, and he was limited in bending and twisting. Salinas further reported that stooping and squatting hurt, and he had to rest and use a cushion for his back during the day. Finally, Salinas stated that some days the pain was so bad that he could not move or get out of bed. Lopez also reviewed the restrictions placed on Salinas by his doctor which included no bending, stooping or climbing, and restrictions on the amount of weight he could lift.

Based on the information she gathered, Lopez concluded that Salinas would be limited to only light work in the future. Based on additional testing she performed, Lopez concluded that Salinas would not be able to be employed in a job that required assembly, speed, or any kind of production that required fine finger manual dexterity. Lopez stated that Salinas could return to light duty work that is unskilled which would likely pay a minimum wage. Although Salinas was a supervisor at Weeks Marine, Lopez testified that those were non-transferrable skills because his knowledge of supervising was limited to the water transportation industry. Lopez stated that she had researched jobs available in the area and identified four jobs that might have been appropriate for Salinas based on his limitations. Lopez also testified, however, that the unemployment rate was 16.5 percent, and Salinas would be required to compete against other individuals to obtain employment who may or may not have a disability.

Thomas H. Mayor, Ph. D., a professor of economics at the University of Houston, performed an economic analysis with respect to Salinas's future economic losses. Mayor calculated the loss assuming that Salinas would retire at the age of 56.4 and taking into account future wage increases, net of inflation, and future interest rates. Mayor testified that the mid-point of his two present value calculations of Salinas's future economic loss was $803,030.00 based on an average net compensation that he would have received for the work he performed prior to the accident of $31,465 each year; however, Mayor did not include any amount for some of the fringe benefits Salinas received at Weeks Marine, such as being provided a room, because he did not have a reliable amount. Assuming Salinas returned to work making minimum wage, the mid-point of Mayor's future economic loss calculations would be $530,000.00. Mayor testified that the expert retained by Weeks Marine, Ignacio Garza, calculated future economic loss to be $540,247.00, or $311,874.00 if Salinas returned to work making minimum wage. Mayor testified that Garza used a retirement age of 55.36. Mayor agreed that if Salinas intended to work to the age of 65, the numbers would be quite a bit higher. Mayor stated that his numbers differed from Garza's due to

the estimation of job expenses, the difference in retirement age, and the estimated interest rate in the future.

Ignacio Garza, a certified public accountant, testified that his calculations of future economic loss were substantially lower because he used estimates of job expenses from Salinas's past tax returns. Garza testified that if Salinas became employed making $10.00 an hour, he would not have a loss of future income. Garza testified that his calculations did not include the value of the room provided to Salinas as a fringe benefit. Garza agreed that he estimated fringe benefits to be approximately 6.2% of wages even though the national average was 13%.

The jury in this case awarded Salinas $1,500,00.00 in future economic loss. Based on the testimony presented, the jury could have concluded that Salinas might not be able to find a job in the future even making minimum wage. The number of job opportunities identified by Lopez for which Salinas was qualified was very few, the unemployment rate was 16.5%, and Salinas would be required to compete for those jobs against other applicants who might not have a similar disability. Furthermore, the jury could have determined that the calculations made by Mayor and Garza were too low because the national average for fringe benefits of 13% should have been used and because the average net compensation that Salinas would have received if he had continued working in his field would have increased each year. Finally, and most importantly, the jury could have determined that Salinas would not likely have retired at age 56.4 but would have continued working until age 65 or later, increasing the future economic loss by at least an approximate ten years of additional net compensation. Because the $1,500,000.00 award falls within the range of damages evidence present-

ed at trial based on the jury's rejection of some of the assumptions made by the experts, the evidence supporting the finding is not so weak as to make the finding clearly wrong or manifestly unjust. *Vela*, 203 S.W.3d at 51.

### UNSEAWORTHINESS AND NEGLIGENCE

Weeks Marine challenges the sufficiency of the evidence to support the jury's findings that the M/V BTD II was unseaworthy on the date of the incident in question and that Weeks Marine was negligent. With regard to unseaworthiness, the jury was instructed that a shipowner owes to every member of the crew employed on its vessel the absolute duty to keep and maintain the ship, and all decks and passageways, appliances, gear, tools, parts and equipment of the vessel in seaworthy condition at all times. Liability for an unseaworthy condition does not in any way depend upon negligence or fault or blame. The duty to provide a seaworthy vessel includes a duty to supply an adequate and competent crew. A vessel may be unseaworthy even though it has a numerically adequate crew, if too few persons are assigned to a given task.

With regard to negligence, the jury was instructed that employers of seaman have a duty to provide their employees with a reasonably safe place to work. The jury was further instructed that it must find Weeks Marine negligent if Salinas was injured because Weeks Marine failed to furnish Salinas with a reasonably safe place to work and the working conditions could have been made safe through the exercise of reasonable care.

Salinas testified that the distance between the gangway and the deck of the M/V BTD II was a foot to a foot and a half. Salinas said there was no dolly that he could use in performing the task. Salinas also testified that he asked Captain

Wyble for assistance in the task of removing and recharging the batteries. Captain Wyble assigned Salinas to perform the task despite his knowledge that Salinas had just returned to regular duty after hurting his back and had told Captain Wyble that his back was still hurting. Captain Wyble initially told Salinas that he would send someone to help him, but Captain Wyble also told Salinas that he was shorthanded. Salinas waited 35 to 40 minutes, but no one came to help him, and he felt pressured to complete the job based on Captain Wyble's hurried attitude and instruction. Captain Wyble did not immediately send anyone to help Salinas even though Salinas told Captain Wyble he had lingering pain from a back injury. Accordingly, the record contains some evidence about which reasonable minds could differ to support the jury's findings that the M/V BTD II was unseaworthy as defined by the charge and that Weeks Marine was negligent.

## CURE

 An election of remedies is the choosing of one or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts. *Green Oaks, Ltd. v. Cannan,* 749 S.W.2d 128, 131 (Tex.App.-San Antonio 1987), *writ denied,* 758 S.W.2d 753 (Tex.1988). The sole purpose of the doctrine of election of remedies is to prevent double recovery for a single wrong. *Id.* Weeks Marine contends that the trial court awarded Salinas a double recovery by awarding him both damages and cure.

 An injured seaman has two separate lines of recovery: damages, and maintenance and cure. *In re Liberty Seafood, Inc.,* 38 F.3d 755, 758 (5th Cir.1994). Cure requires the employer to pay a seaman's medical expenses. *Boudreaux v. U.S.,* 280 F.3d 461, 468 (5th Cir.2002). A cure award cannot duplicate tort damages. *Id.* However, a court may exclude medical expenses from a tort recovery and award damages for the tort excluding medical expenses and cure. *See Brister v. A.W.I., Inc.,* 946 F.2d 350, 361 (5th Cir.1991); *Colburn v. Bunge Towing, Inc.,* 883 F.2d 372, 378 (5th Cir.1989). In this case, the trial court excluded the amounts awarded by the jury for past and future medical expenses from the tort damage award and separately awarded cure. Accordingly, there was no duplication in the amounts awarded by the trial court's judgment.

## MENTAL ANGUISH

 Weeks Marine challenges the sufficiency of the evidence to support the jury's award of $10,000.00 to Salinas for past mental anguish and feelings of economic insecurity. To recover for mental anguish, Salinas was required to show by direct evidence "the nature, duration or severity of [his] anguish, thus establishing a substantial disruption in [his] daily routine," or show by other evidence "a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996). Dr. Pechero testified that he scheduled Salinas's surgery less than a week after he saw Salinas for the first time because Salinas had very severe pain and hypertension secondary to the pain. Salinas had severe weakness of the left lower extremity, severe numbness, and "he was in severe distress." Salinas testified that the pain prevented him from running and playing with his children. Salinas is unable to carry his two-year-old son. Salinas cannot drive a lot and cannot go shopping or dancing with his wife. This evidence is sufficient to sustain the jury's mental anguish damage award.

## COURT COSTS

■ Weeks Marine contends that the trial court erred in awarding Salinas $10,200.00 in court costs because no evidence supported the award. Weeks Marine did not preserve this complaint for appellate review because it did not include this complaint in its motion for new trial or otherwise bring it to the trial court's attention. *See* TEX.R.APP. P. 33.1(a).

## CROSS-APPEAL—CONTRIBUTORY NEGLIGENCE

■ In his cross appeal, Salinas contends that the trial court erred in reducing the compensatory damage recovery by thirty percent because Salinas elected to recover under his unseaworthiness claim, and no contributory negligence question was submitted with regard to that claim. Because contributory negligence was an affirmative defense, Weeks Marine had the burden to request a proper charge as to the defense. *See Signal Oil & Gas Co. v. Universal Oil Products,* 572 S.W.2d 320, 333 (Tex.1978); *Yoakum Grain, Inc. v. Energy Industries, Inc.,* 511 S.W.2d 95, 99 (Tex.Civ.App.-Corpus Christi 1974, no writ). "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." TEX.R.APP. P. 279.

In this case, the jury charge contained general instructions regarding the contributory negligence defense that referred to both Salinas's Jones Act claim and his unseaworthiness claim. The charge also properly informed the jury that the causation burden for the Jones Act claim was "legal cause" while the causation burden for the unseaworthiness claim was "proximate cause." *See Brister,* 946 F.2d at 354–55 (contrasting liberal causation standard under Jones Act with more demanding proximate causation standard for unseaworthiness claim). The only question submitted with regard to contributory negligence, however, related to the Jones Act negligence claim.

Question No. 3 asked the jury about liability for the Jones Act negligence claim properly framed with the "legal cause" standard. The jury was then instructed to answer Question No. 4 only if it answered "yes" to Question No. 3. Question No. 4 then asked what percentage of the negligence that "legally caused" Salinas's injuries was attributable to Weeks Marine and Salinas.

■ Although Question No. 5 asked the jury whether the M/V BTD II was unseaworthy, and Question No. 6 asked whether the unseaworthy condition was a "proximate cause" of the occurrence or injury, no additional question was requested by Weeks Marine inquiring about whether despite the unseaworthy condition, Salinas was contributorily negligent with regard to the injuries he suffered as result of the unseaworthy condition. *See Marceaux v. Conoco, Inc.,* 124 F.3d 730, 734–35 (5th Cir.1997) (noting that court submitted separate interrogatories requesting separate findings of contributory negligence as to both the Jones Act claim and the unseaworthy claim), *superseded by rule on other grounds, Mathis v. Exxon Corp.,* 302 F.3d 448, 459 n. 16 (5th Cir. 2002). Accordingly, Weeks Marine waived its contributory negligence defense with regard to the unseaworthy claim.

■ Weeks Marine argues that the trial court could deem a finding as to the defense; however, the trial court could only make such a finding if an element of the contributory negligence defense had been submitted to the jury with regard to the unseaworthiness claim. *See* TEX.R. CIV. P. 279. In this case, no such element was submitted with regard to the unseaworthiness claim. Accordingly, the trial

court erred in reducing Salinas's compensatory damages awarded for his unseaworthiness claim by thirty percent.

### CONCLUSION

We reverse that portion of the trial court's judgment reducing the amount of damages awarded by the jury by thirty percent and render judgment that Salinas is entitled to recover $1,585,000.00 in compensatory damages. We affirm the remainder of the trial court's judgment.