MEMORANDUM OPINION



No. 04-05-00902-CV



WEEKS MARINE, INC.,


Appellant



v.



Enrique Jose VELA,


Appellee



From the 381st Judicial District Court, Starr County, Texas


Trial Court No. DC-03-221


Honorable John A. Pope, III, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Alma L. López, Chief Justice

 Catherine Stone, Justice

 Karen Angelini, Justice


Delivered and Filed: May 9, 2007


AFFIRMED Weeks Marine appeals the trial court's judgment awarding damages to Enrique Jose Vela for
injuries he sustained in the course and scope of his employment. On appeal, Weeks Marine brings
four issues: (1) the trial court should have granted its motion for mistrial because plaintiff's counsel
made a racially prejudicial statement before the jury; (2) the trial court should have granted its
motion for mistrial because of juror misconduct; (3) there was legally and factually insufficient
evidence to support the jury's award of future pain and suffering; and (4) because the jury's answers
to certain questions were inconsistent and conflicting, they must be disregarded. We affirm the
judgment of the trial court. 

Background


 On June 1, 2003, Enrique Jose Vela was an employee of Weeks Marine, working as a mate
on a booster barge in the Houston Ship Channel. Vela had climbed down inside a pump to clean out
debris when the oiler aboard Weeks Marine's barge started its engine, causing pressured water to
flow into and through the pump. This pressured water, in turn, caused Vela to be blown out of the
pump into the air. As a result of the fall, Vela injured his shoulder and back, and was taken to shore
for emergency medical care. At the emergency room, Vela complained of severe pain in his lower
back and tingling in his right thigh. After receiving an injection for his pain, he left the hospital at
3:00 a.m. on June 2, 2003. Later that same day, he visited a doctor referred to him by Weeks Marine,
Dr. Medhat Bedros, who told him he should be off work until June 9th, the day of his next
appointment.

 On June 3, 2004, Vela visited another doctor referred by Weeks Marine, Dr. David G.
Vanderweide. Dr. Vanderweide's nurse told Vela that pursuant to the doctor's instruction, he could
not return to work. The Weeks Marine employee who had accompanied Vela then asked about light
duty work. The nurse reiterated the doctor's instruction. The Weeks Marine employee responded that
light duty work was the equivalent of not working. The nurse replied, "Do whatever you want to do."
According to Vela, "That's the last word I heard, and I got out." Vela returned to the barge and left
with permission on June 4, 2003.

 On June 12, 2003, Vela was scheduled to work, but he did not return to the barge, believing
that he was off work pursuant to doctor's orders. On June 13, 2003, Weeks Marine fired Vela, citing
as a reason that he had been put on light duty and had not returned to his regular schedule. 

 On June 23, 2003, Vela sued Weeks Marine and asserted Jones Act, unseaworthiness, and
maintenance and cure claims. Two years later, on June 23, 2005, the case went to trial. After hearing
the evidence, the jury found that Weeks Marine owed Vela maintenance and cure. It found that Vela
had not reached maximum cure and that Vela will reach maximum cure on December 14, 2005. It
found that Weeks Marine owed Vela $350,000 in cure. It also found the following compensatory
damages: $250,000 for past physical pain and suffering; $1,500,000 for future pain and suffering;
$65,000 for income lost in the past; $550,000 for impairment of earning capacity or ability in the
future; $126,000 for past medical expenses; and $157,000 for future medical expenses.

Jury Argument


 According to Weeks Marine, the trial court should have granted its motion for mistrial after
Vela's "counsel made an unprovoked, unsupported, and racially prejudicial statement before the jury
accusing [Weeks Marine]'s representative of telling [Vela] that he should apply for food stamps."
Weeks Marine argues that Vela's counsel made a "derogatory appeal to racial prejudice during his
examination of [its] corporate representative" that had "no basis in the record, was not supported by
fact, and was absolutely negated by" Vela's own testimony.

 While questioning Teresa Olivo, Weeks Marine's corporate representative and claims
manager, Vela's counsel asked whether Olivo had spoken with Tom Langan, Weeks Marine's risk
manager, about his conversation with Vela. After Olivo confirmed that she had spoken with Langan
about his conversations with Vela, Vela's attorney then asked the following:

 Q: Did he ever tell you of the conversation that he had with Mr. Vela
where he told Mr. Vela that he could go get on food stamps?


 A: No.

 

 Q: Did he ever tell you about the conversation that he had with Mr. Vela
where he said he wasn't going to pay Mr. Vela for his time off?


 [Defense]: I object. May we approach the bench?


 The jury was then excused, and the trial court asked the parties to look over the depositions
and see "if [plaintiff's counsel] reference concerning this examination on deposition of Mr. Vela is
correct." After a break, defense counsel informed the court that he had "looked through the
deposition testimony, and it didn't take place." Defense counsel then moved for a mistrial, arguing
that the question was improper and meant to inflame the jury. The trial court denied the motion, but
warned plaintiff's counsel to only ask questions supported by evidence:

 Do y'all have anything indicating that Mr. Langan or anybody with Weeks Marine
told him to go on welfare or to eat air or something like that? That they did it? If they
didn't - y'all are playing games with me, gentlemen. . . . I'm telling you now to stop
it. I might declare a mistrial later on down the road, and I might sanction y'all for
money. I don't know what I'm going to do. We're going to stop this right now.


When the jury came back in, the trial court instructed the following:

 Let me preface what I'm going to tell you in a few minutes. Sometimes in the heat
of argument in the presentation - you remember, I keep - I've told you once or twice
or three times, you can't take what the lawyers say as facts, okay? And not to
consider that. And, later on down, when the charge is submitted to you, if we get that
far, I'll have - I'll have something to tell you about that you can't consider your - in
this matter, you can't consider sympathy or bias or anything that will affect your -
not - make your brain work, not your heart.


 But I - I think I have to say something. There was a reference made to a Mr. Langan
that he might have told Mr. Vela to go [get] food stamps. I think I have to correct -
and during the dinner hour, I asked the lawyers to go back on the depositions and find
something that has any basis for it because that can cause some irritation. Okay.
Fortunately, unfortunately, whatever it is, there was none, no statement from anybody
from Weeks Marine [who] had made that statement nor is there any evidence in this
case about that. Okay. 


 So, I'm instructing you at this time, do not consider any part of that in your decision-making. It's not there. It hadn't been shown and, more than likely, will not be shown
because there's - in the depositions, discovery matters were brought out, there is
nothing in there. So you can't consider that. Please. Please. Please forget about that.
And, I'm ordering you to do that because it's not there. 

 On appeal, Weeks Marine argues that the question by plaintiff's counsel was improper jury
argument. Generally, to obtain reversal on the basis of improper jury argument, an appellant must
prove "(1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial
predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable
by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge." Standard Fire
Ins. Co. v. Reese, 584 S.W.2d 835, 839 (Tex. 1979). And, the appellant must also prove "that the
argument by its nature, degree and extent constituted reversibly harmful error," and "that the
probability that the improper argument caused harm is greater than the probability that the verdict
was grounded on the proper proceedings and evidence." Id. at 839-40. 

 Weeks Marine urges that the statement made by appellant's counsel was incurable because
it was a racially prejudicial question meant to inflame the jury. We disagree. A question referencing
food stamps is not inherently a racially prejudicial statement. We do, however, agree that the
question was not proper in that there was nothing in the record to support the question. However,
the trial court's instruction cured the error. We, therefore, overrule appellant's first issue.

Jury Misconduct


 In its second issue, Weeks Marine argues that the trial court should have granted its motion
for mistrial after Vela "engaged in jury misconduct by improperly speaking to a prospective juror
during voir dire about his injuries." We disagree that the trial court erred in failing to grant a mistrial.

 At trial, after voir dire had been completed, the venire panel was given a break so that the
lawyers could make their peremptory challenges. During that break, a venire panel member, Juror
No. 17, was seen speaking to Vela. After the break, the defense brought the matter to the attention
of the trial court. Because neither party had used their peremptory challenges to strike her, Juror No.
17 was to be a member of the jury. Thus, she was brought into the courtroom to answer questions
about her encounter with Vela:

 Q: [A] few minutes ago, you were seen talking to Mr. Vela?

 A: Yes.

 Q: What did you talk about?

 A: About my injury.

 Q: Did you ask him about his?

 A: No, only mine. Yeah, more or less.

 Court: You can't talk to these people . . . that shows bias. Are
you telling me that that's all you talked about?


 A: Yes. You can ask him.

 Court: No, I'm not going to ask him. Wait outside, ma'am.

 The trial court then released Juror No. 17, but the defense moved for a mistrial, arguing that
there had been juror misconduct that had tainted the jury. The trial court denied the motion, but
allowed the defense to call more witnesses to testify about the encounter. Thus, an employee of one
of the defense lawyers testified that she had seen Vela and Juror No. 17 talking "like they knew each
other." When asked if there was anybody else involved, the witness replied that they were "the only
two [who] were in that area." According to the witness, the conversation between Vela and Juror No.
17 lasted "maybe a minute." At that point, Vela, himself, interrupted the proceedings: "She asked
me if it hurt, if my back hurt and I said, 'Yes' . . . . She asked me if it hurt, and I said yes. She said,
'I can see it in your face.'" 

 Another witness, one of the defendant's lawyers, also testified. According to the witness, she
had seen one of the venire members, who was picked as an alternate, standing about four yards from
Vela and Juror No. 17. 

 The trial court then brought the venire panel back into the courtroom and swore in the jury.
It then instructed the jury not to talk to the parties:

 A few minutes ago, we had a problem that ties in exactly with the situation that you
cannot talk to anybody about the case or permit anybody to discuss it with you at any
time. As a result of this conversation that took place, as innocent as it was, [Juror No.
17], I cannot keep you here. I'm going to have to discharge you, okay, because you
should not have talked to the plaintiff. What you talked about, you've already told
me, but I can't keep you here. It looks bad. Okay? So, I'm discharging you, ma'am.
You can leave now. Okay. 


One of the alternates (but not the one who was seen near Vela and Juror No. 17) then took Juror No.
17's place on the jury. The trial court then asked if any of the members of the jury had seen Juror No.
17 talking to Vela. The other alternate (the one who had been seen near Vela and Juror No. 17)
replied that he had. However, when asked if he had heard any part of the conversation, he replied that
he had not. 

 We review a trial court's denial of a motion for mistrial for abuse of discretion. Lopez v. La
Madeleine of Tex., Inc., 200 S.W.3d 854, 860 (Tex. App.--Dallas 2006, no pet.); Till v. Thomas, 10
S.W.3d 730, 734 (Tex. App.--Houston [1st Dist.] 1999, no pet.). To warrant a new trial for jury
misconduct, the movant must establish (1) that the misconduct occurred, (2) it was material, and (3)
probably caused injury. Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 362, 372 (Tex. 2000).
Whether misconduct occurred and caused injury is a question of fact for the trial court. Id. 

 Here, despite the fact that Juror No. 17 was excused from the jury immediately after the jury
was sworn in, and despite the fact that the alternate (who saw but did not hear the conversation
between Vela and Juror No. 17) was never a member of the jury and did not engage in jury
deliberations, Weeks Marine argues that Juror No. 17's misconduct probably caused injury:

 The fact is--[the misconduct] happened, the jury was told about it, all on the jury
now knew it happened, and all on the jury were left with the impression that it was
okay. It was not. The probable harm is real; it affects the importance the jury gives
to its duty to listen to the evidence, to deliberate, and to render a true verdict. Under
the circumstances, a mistrial should have been granted.


 We disagree and find no abuse of discretion by the trial court. Juror No. 17 was excused
before the trial in chief began. The alternate who saw Juror No. 17 and Vela talking never became
a member of the jury. And, although Weeks Marine argues that the jury was left with the impression
that "it was okay," in fact, the trial court instructed the jury that such conduct was not okay. It
repeated its instruction to the jury not to discuss any matters with the parties and informed it that
Juror No. 17 had to be dismissed from service because of her conversation with Vela. 

 We, therefore, overrule this issue.

Sufficiency


 A. Preservation of Error

 According to Weeks Marine, there is legally and factually insufficient evidence to support
the jury's award of $1,500,000 for future pain and suffering. In response, Vela argues that Weeks
Marine failed to preserve this issue for appeal because it did not timely pay the filing fee for its
motion for new trial.

 A motion for new trial is a prerequisite to the following issues on appeal: (1) factual
sufficiency of the evidence to support a jury finding; and (2) adequacy or excessiveness of the
damages found by the jury. Tex. R. Civ. P. 324(b); see Weeks Marine, Inc. v. Salinas, No. 04-05-00577-CV, 2007 WL 390307, at *2 (Tex. App.--San Antonio Feb. 7, 2007, pet. filed). However,
as explained by the Texas Supreme Court in Garza v. Garcia, 137 S.W.3d 36, 38 (Tex. 2004), when
a party timely files a motion for new trial but fails to pay the applicable filing fee, the trial court is
not required to consider the motion. As such, under those circumstances, any complaint made in the
motion for new trial has not been properly made to the trial court and does not preserve anything for
appellate review. Garza, 137 S.W.3d at 38; Weeks Marine, 2007 WL 390307, at *2. 

 Here, Weeks Marine timely filed a motion for new trial, and the trial court held a hearing
within its plenary power on the motion. However, the trial court never ruled on the motion, and the
motion was overruled by operation of law. And, although Weeks Marine timely filed the motion, it
did not pay the filing fee until after the trial court lost plenary power. This court recently considered
these same facts in Weeks Marine, Inc. v. Salinas, No. 04-05-00577-CV, 2007 WL 390307, at *2
(Tex. App.--San Antonio Feb. 7, 2007, pet. filed), and explained that these facts were
distinguishable from those presented to the supreme court in Garza. Thus, we noted that the issue
"becomes whether the trial court's act in holding the hearing on the motion resulted in error being
preserved despite: (1) the failure to pay the filing fee while the trial court had plenary jurisdiction;
and (2) the fact that the motion was overruled by operation of law." Id. We, however, declined to
reach the merits of the issue and instead assumed for purposes of the appeal that the motion for new
trial was sufficient to preserve error. Id. Similarly, here, for purposes of this appeal, we assume,
without deciding, that the motion for new trial was sufficient to preserve error as to the issues
properly presented in the motion.

 B. Standard of Review

 Pursuant to the Jones Act, an injured maritime worker may sue its employer for negligence.
Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 405-06 (Tex. 1998). When a state court hears
an admiralty case, that court occupies essentially the same position occupied by a federal court sitting
in diversity: the state court must apply substantive federal maritime law but follow state procedure.
Ellis, 971 S.W.2d at 406; Weeks Marine, 2007 WL 390307, at *2. And, under the Federal
Employers' Liability Act (FELA), a related statute, the causation burden is not the common law
proximate cause standard. Ellis, 971 S.W.2d at 406; Weeks Marine, 2007 WL 390307, at *2. Rather,
the causation burden is "whether the proof justifies with reason the conclusion that employer
negligence played any part, even the slightest, in producing the injury for which the claimant seeks
damages." Ellis, 971 S.W.2d at 406; Weeks Marine, 2007 WL 390307, at *2. This burden has been
termed "featherweight." Ellis, 971 S.W.2d at 406; Weeks Marine, 2007 WL 390307, at *2. And,
because the Jones Act expressly incorporates FELA and the case law developing that statute, the
causation standard under the Jones Act is the same as that under FELA. Ellis, 971 S.W.2d at 406;
Weeks Marine, 2007 WL 390307, at *2.

 Texas courts of appeal have the power to review excessiveness of damages and to order
remittitur in FELA actions and, by implication, in Jones Act cases as well. Ellis, 971 S.W.2d at 406;
Weeks Marine, 2007 WL 390307, at *3. The standard of review for an excessive damages complaint
is factual sufficiency of the evidence. Ellis, 971 S.W.2d at 406; Weeks Marine, 2007 WL 390307,
at *3. When considering a factual sufficiency challenge to the jury's verdict, we must consider and
weigh all the evidence, not just the evidence that supports the verdict. Ellis, 971 S.W.2d at 406-07;
Weeks Marine, 2007 WL 390307, at *3. We can set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence that the verdict is clearly wrong and unjust. Ellis, 971 S.W.2d
at 407; Weeks Marine, 2007 WL 390307, at *3. We are not a fact finder and, as such, may not pass
upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence
would clearly support a different result. Ellis, 971 S.W.2d at 407; Weeks Marine, 2007 WL 390307,
at *3.

 C. Analysis 

 The jury awarded Vela $1,500,000 for "future pain and suffering including physical
disability, impairment, and inconvenience, and the effect of [Vela]'s injuries and inconvenience on
the normal pursuits and pleasures of life." In its brief, Weeks Marine argues that this finding by the
jury is supported by legally and factually insufficient evidence because it is inconsistent with the
evidence. Weeks Marine emphasizes that Vela testified that before his back surgery, his back pain
was severe, his shoulder pain was also bad, and he was unable to move his fingers. However, after
his surgery, Vela testified that his pain and symptoms improved. Thus, despite Vela testifying that
his pain improved, the jury awarded more for future pain and suffering than for past pain and
suffering ($250,000 versus $1,500,000). According to Weeks Marine, "[t]he result is inconsistent
and not in conformity with the evidence in this case." Week Marine, however, fails to point to the
actual evidence that makes this finding inconsistent. See Tex. R. App. P. 38.1(h).

 In reviewing the appellate record, we find that the evidence was sufficient. After the accident,
Vela underwent a laminectomy and two-level fusion of his back. Vela testified that after his surgery
he experienced less pain than before the surgery, but that he still had pain every day in his lower back
and right leg. Vela's treating neurosurgeon testified that surgery could not be expected to heal all of
Vela's pain and that he would have some residual pain and problems with his back for the rest of his
life. According to the surgeon, "when you undergo this kind of operation, there's always continued
back pain or trouble. And there's going to be need for medical care for that purpose." 

 Vela also had surgery on his shoulder. With regard to his shoulder, like his back surgery,
before the surgery he had pain all the way from his shoulder to his fingers and could not even move
his fingers; after the surgery he is able to move his arm "a little bit better." And, according to Vela,
if he lifts his arm too high, it still hurts.

 With regard to physical disability and impairment, Vela's neurosurgeon testified that he had
placed long-term restrictions on Vela because of the injury to his back. Vela cannot lift or carry more
than twenty pounds on a repetitive basis. He cannot bend, stoop, climb, twist, or perform any
activities that put strain or stress on his back. And, he cannot stand or sit for long periods of time.
Similarly, with respect to Vela's shoulder, Vela's treating orthopedic surgeon placed permanent
restrictions on him. He cannot work above the shoulder level because doing so "will be painful" and
could tear his rotator cuff again. He cannot lift more than thirty-five to forty pounds on a repetitive
basis or sixty pounds on an occasional basis. 

 With respect to inconvenience on the normal pursuits and pleasures of life, Vela testified that
he cannot play soccer, his favorite sport, anymore. Without pain medication, he cannot sit for long
without pain; however, when he takes pain medication he has difficulty staying awake. He can no
longer drive long distances and described his limit as the distance from Rio Grande City, Texas, to
McAllen, Texas. And, Vela emphasized that he loved his work, but can no longer perform his job.
Indeed, Vela's physicians testified that he could not return to work as a mate. 

 In reviewing the record, the evidence is sufficient to support the jury's finding. Further,
although Weeks Marine argues that the jury's findings as to past and future pain and suffering were
inconsistent, we disagree. The evidence showed that Vela will experience pain for the rest of his life.
Thus, even though Vela testified that his pain had improved since the surgery, it was reasonable for
the jury to find a larger amount for future damages as it was considering pain and suffering for the
rest of his life. See Southwest Tex. Coors, Inc. v. Morales, 948 S.W.2d 948, 951-52 (Tex. App.--San
Antonio 1997, no writ) ("Matters of pain and suffering, which are necessarily speculative and not
subject to precise mathematical calculation, are particularly within the province of the jury to resolve
and to determine appropriate amounts.").

Inconsistent Findings


 In its final issue, Weeks Marine argues that the jury's findings for past and future medical
expenses are inconsistent with its finding of cure. (1) As such, it argues that the jury's findings must
be disregarded. Weeks Marine, however, has failed to preserve this issue for appeal. In order to
preserve error, an appellant must object to the conflict or inconsistency before the jury is discharged.
Kennedy Ship & Repair, L.P. v. Pham, 210 S.W.3d 11, 24 (Tex. App.--Houston [14th Dist.] 2006,
no pet.); Roberson v. Collins, No. 01-05-00471-CV, 2006 WL 2192779, at *2 (Tex. App.--Houston
[1st Dist.] 2006, no pet.); Norwest Mortgage, Inc. v. Salinas, 999 S.W.2d 846, 865 (Tex.
App.--Corpus Christi 1999, writ denied); Torres v. Caterpillar, Inc., 928 S.W.2d 233, 245 (Tex.
App.--San Antonio 1996, writ denied). Thus, by not making such an objection before the jury was
discharged, Weeks Marine waived this issue on appeal.

 Moreover, we note that although Weeks Marine argues that Vela had a double recovery
(medical expenses and cure), in fact, Vela elected his remedy. As such, the trial court's judgment
awards Vela only for his medical expenses and does not award him damages for cure. 

Conclusion


 The trial court did not err in denying Weeks Marine's motion for mistrial based on improper
jury argument. Nor did it err in denying Weeks Marine's motion for mistrial based on juror
misconduct. There was sufficient evidence to support the jury's finding for future pain and suffering.
And, finally, Weeks Marine has failed to preserve error with respect to any inconsistent jury findings.
Therefore, we affirm the judgment of the trial court. 


 Karen Angelini, Justice



1. The jury was instructed that the "cure" to which a seaman may be entitled includes the cost of medical
attention, including the services of physicians and nurses as well as the cost of hospitalization, medicines, and
medical apparatus.