In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00147-CR

                                                ______________________________

 

 

                                    LEE EDWARD MORRIS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 22425

 

                                                            
                                      

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley

 








                                                     MEMORANDUM 
OPINION

            

            Narcotics
investigators were able to make an audio recording of Lee Edward Morris selling
cocaine to confidential informants, and Morris was convicted by a jury of two
counts of delivery of more than one, but less than four, grams of a controlled
substance.[1]  The jury also found the second of those
deliveries occurred within 1,000 feet of a playground (a drug-free zone).  Punishment was enhanced by Morris’s prior
felony convictions for possession of a deadly weapon in a penal institution and
engaging in organized criminal activity. 
Consequently, Morris was sentenced to fifty years’ imprisonment on the
first count and seventy-five years’ imprisonment on the second count, to be
served concurrently.  

            On
appeal, Morris first complains that the trial court erred in overruling a Batson[2]
challenge.  We conclude the trial court
did not clearly abuse its discretion in making its ruling.  Morris next complains the trial court erred
in seating the final jury panel, failing to require the court reporter to
record a bench conference during voir dire, and in commenting on Morris’s right
not to testify and present mitigating evidence during punishment.  Because Morris’s trial counsel failed to
preserve error on these points of error, they are overruled.  Recognizing that preservation would likely
prevent our review on certain points, Morris raised ineffective assistance of
counsel in failing to object to the jury panel and the court’s allegedly
impermissible comments during punishment. 
However, Morris failed to sufficiently demonstrate counsel’s
ineffectiveness and we overrule his ineffective assistance of counsel
claims.   

I.          The Trial Court Did Not
Err in Overruling Morris’s Batson Challenge

            The
Equal Protection Clause of the Fourteenth Amendment to the United States
Constitution prevents the exercise of peremptory strikes based on a prospective
juror’s race.  Batson v. Kentucky, 476 U.S. 79 (1986); Guzman v. State, 85 S.W.3d 242, 245 (Tex. Crim. App. 2002); Splawn v. State, 160 S.W.3d 103, 114
(Tex. App.—Texarkana 2005, pet. ref’d); see
Tex. Code Crim. Proc. Ann. art.
35.21 (Vernon 2006). 

            Once
a Batson challenge is raised, the
trial court engages in a three-step inquiry. 
Purkett v. Elem, 514 U.S. 765,
767–68 (1995); Ford v. State, 1
S.W.3d 691, 693 (Tex. Crim. App. 1999); Montgomery
v. State, 198 S.W.3d 67, 76 (Tex. App.—Fort Worth 2006, pet. ref’d).  Under the first step, the person raising a Batson challenge is required to make a
prima facie showing of racial discrimination. 
Ford, 1 S.W.3d at 693; Montgomery, 198 S.W.3d at 76.  Once that prima facie showing is
accomplished, the burden shifts to the State to present a racially neutral
reason for the challenged jury strikes.  Ford, 1 S.W.3d at 693; Montgomery, 198 S.W.3d at 76.  Third, and finally, once the State’s reason
is proffered, the burden of persuasion shifts back and the person raising the
challenge must then convince the court that the reason given by the State was
not race-neutral, and was merely pretext for concealing discrimination.  Ford,
1 S.W.3d at 693 (citing Purkett, 514
U.S. at 767–68). 

            We
review the evidence relevant to the Batson
challenge in the light most favorable to the trial court’s ruling.  Cantu
v. State, 842 S.W.2d 667, 689 (Tex. Crim. App. 1992); Roberts v. State, 963 S.W.2d 894, 899 (Tex. App.—Texarkana 1998, no
pet.).  A high degree of deference is
given to the trial court, who is in the best position to determine if the State’s
facially neutral explanation for a peremptory strike is genuine.  Splawn,
160 S.W.3d at 114 (citing Jasper v. State,
61 S.W.3d 413, 421–22 (Tex. Crim. App. 2001)). 
Thus, a “clearly erroneous” standard of review is applied to the trial
court’s decision to overrule a Batson
challenge.  Hernandez v. New York, 500 U.S. 352, 369 (1991); Splawn, 160 S.W.3d at 114 (citing Gibson v. State, 144 S.W.3d 530, 534
(Tex. Crim. App. 2004)).  A finding is
clearly erroneous where the reviewing court “is left with the definite and firm
conviction that the trial court committed a mistake.”  Roberts,
963 S.W.2d at 899. 

            During
voir dire, the State individually elicited veniremember responses to the
following inquiry: 

            There
are a number of theories about why jurors do what they do, and jurors punish
and return the verdicts that they return, because in the same case, same set of
facts, two separate juries will do two completely different things.  

            So
people who study this sort of thing have found three common themes among
jurors, why jurors set the sentences that they do.  Some jurors will return a sentence because
they want to keep other people from committing the same or similar crimes [punishment
theory one]; . . . . 

            Some
jurors favor number two, rehabilitation; we’re going to try to help the person
who has committed this crime, we’re going to give them probation, or we’re
going to recommend that they go to a mental hospital, or whatever the case
might be.  

            . . . some jurors out there just want to punish that
defendant for what he’s done, to send a message to him [punishment theory
three] . . . . 

            . . . . I want to find out from you which of these
theories you subscribe to.   

 

After the State presented its
list of peremptory strikes, Morris’s counsel objected that the State improperly
struck Sarah Williams (juror number eight) and Elane Hill (juror number eleven)
from the jury based on their African-American race.  The State proffered this race-neutral reason
for striking Williams and Hill: 

The Court may recall that I asked the jury panel,
as a whole, their particular theories on punishment, whether it was the
deterrence, rehabilitation or punishment for punishment’s sake.  I asked the jurors to give me their number,
one, two or three, whichever one they chose.  

            Two
was rehabilitation.  If a juror felt that
rehabilitation would be the guiding principle or the theory behind which he
would set punishment, I wrote down by that juror’s name, two.  I went back to the jury room, and in counting
up the numbers, I discovered that 12 potential jurors had identified
rehabilitation as the theory behind how they would assess punishment, or the
criteria they would use to assess punishment in this case.  

            I
think [Morris’s counsel] would agree with me, this is a punishment case.  Guilt is not the real issue here.  Both transactions were captured on
videotapes.  The real issue in this case
is going to be what kind of sentence is the defendant going to receive.  

            All
of the jurors that answered, rehabilitation, I struck.  There were white jurors, there were black
jurors, there were some jurors that, quite frankly, I would like to have
kept.  I struck every juror, white,
black, Hispanic, Indian, Asian, whoever they were, I struck every single juror
that answered rehabilitation as their punishment theory.

 

Indeed, each of the veniremembers
peremptorily struck by the State (including Williams and Hill) responded
affirmatively that they believed in the theory of punishment number two posited
by the State––rehabilitation.  The State
pointed out that it exhausted its peremptory strikes and would have struck even
more members of the jury pool who believed in the second theory of punishment
if it had additional strikes.  Once the
State’s reasoning was offered, and it was confirmed that all the veniremembers struck
by the State responded they believed in the second theory, Morris’s counsel
failed to argue that the State’s reasoning was pretext for discrimination.  Counsel merely stated he was “making an
objection for the record.”  

            In
Montgomery and Victor, our sister courts found that “a veniremember’s belief in
rehabilitation as the primary goal of punishment is a race-neutral reason for
the exercise of a peremptory challenge.”  Montgomery,
198 S.W.3d at 76; Victor v. State,
995 S.W.2d 216, 222 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).  We conclude that the trial court’s finding
(i.e., that the State proffered a sufficient race-neutral reason for striking
Williams and Hill and that Morris failed to meet his burden of persuasion to
demonstrate otherwise) was not clearly erroneous.  See
Splawn, 160 S.W.3d at 115.

            In
his appellate brief, Morris additionally argues that the State struck jurors thirty-one
and thirty-two, but did not strike juror number thirty, who also subscribed to
the rehabilitation punishment theory. 
However, this challenge to the State’s race-neutral reason was never
presented to the trial court.[3]  Because the trial court was thus unable to
consider this argument, it is not preserved for our consideration.  

            Morris’s
first point of error is overruled.   

II.        Morris
Did Not Preserve Remaining Claims of Trial Court Error 

            A.        Seating
a Peremptorily Struck Juror on the Jury Panel

            Morris’s counsel peremptorily struck
“Ricky Bond” and listed him as juror number “36.”  A review of the jury list reveals that Bond
was actually juror number 35 and that juror number 36 was Gary Reed, who was
not chosen to be on the jury and whose name did not appear on either strike
list.  Morris argues on appeal that the
trial court erred in allowing Bond to sit on the jury and also erred because “Reed
should be juror #9 instead of Bond.”  

            “It
is well settled that it is the responsibility of the parties to assure that the
jury impaneled does not include a juror that has been struck.” 
Jackson v. State, 826 S.W.2d 751, 752 (Tex. App.—Houston [14th
Dist.] 1992, pet. ref’d); see also Miller
v. State, 692 S.W.2d 88, 93 n.10 (Tex. Crim. App. 1985).  The party must object before the panel is
sworn, or else show that the juror was otherwise disqualified because of
prejudice toward the appellant.  Jackson, 826 S.W.2d at 752; Miller, 692 S.W.2d at 93 n.10.  No objection was lodged to Bond being seated
on the jury as opposed to Reed, and Morris’s counsel affirmatively stated he
did not contest any jury member’s qualification to sit on the panel. 

            B.        Failure
of Court Reporter to Record Bench Conference

            Morris next complains that the trial
court denied him the right of review by “failing to make the services of the
court reporter available” during a bench conference.[4]   It is uncontested that the court reporter
was available and present in the courtroom during the bench conference, but
failed to record it.  Morris cites this
Court to the rule stating that a court reporter has a duty to record all
proceedings unless expressly waived.  Tex. R. App. P.
13.1.  We have previously held that this
Rule does not excuse counsel from the requirement to preserve error through an
objection if the court reporter fails to make a record as required.  Rittenhouse
v. Sabine Valley Ctr. Found., Inc., 161 S.W.3d 157, 161 (Tex.
App.—Texarkana 2005, no pet.); see also
Jones v. State, 942 S.W.2d 1, 2 (Tex. Crim. App. 1997) (en banc) (objection
required to preserve error stemming from failure to transcribe voir dire
proceedings)[5];
Valle v. State, 109 S.W.3d 500, 508–09
(Tex. Crim. App. 2003) (holding objection required to preserve error if bench
conference not recorded).  Counsel for
Morris failed to object to the failure of the court reporter to transcribe the
bench conference.  

 

            C.        Comment
on Morris’s Right Not to Testify and Present Mitigating Evidence

            Immediately after the enhancement
paragraphs were read during the punishment phase of the trial, the court
advised Morris “that you have the right to remain silent during the punishment
phase of the trial and to present evidence of mitigation at punishment.  Do you understand that?,” to which Morris
replied “Yes, sir.”  In his appellate
brief, Morris interprets this exchange as an improper comment on his right not
to testify and present mitigating evidence in front of the jury.  Again, counsel failed to object to the trial
court’s comments, perhaps because he felt the court’s comments were merely an
admonishment, rather than improper comments. 

            D.        Lack
of Preservation Prevents Our Review 

            In
order to preserve these points of error for our review, Morris was required to
present a timely, specific objection to the trial court and secure an adverse
ruling.  Tex. R. App. P. 33.1; Fox v. State, 175 S.W.3d 475, 481 (Tex. App.—Texarkana 2005, pet.
ref’d).  Because his counsel failed to
object to the above alleged errors regarding the failure of the court reporter to
transcribe the bench conference and the comments by the trial court, they were
unpreserved and nothing is presented for our review.  Thus, they are overruled.       

III.       The Record Does Not
Demonstrate that Morris’s Counsel Was Ineffective 

            In his final point,
Morris argues that his counsel was ineffective for failing to object to Bond’s
placement on the jury, Reed’s exclusion from the jury, and the trial court’s
alleged improper comments on Morris’s failure to testify and present mitigating
evidence.  

            A.        Standard
of Review 

            Morris’s allegations of his counsel’s
ineffectiveness must be firmly founded in the record. Goodspeed v. State, 187 S.W.3d 390, 392 (Tex.
Crim. App. 2005); Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999);
Wallace v. State, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), aff’d, 106 S.W.3d 103 (Tex. Crim.
App. 2003).  “Trial counsel should
ordinarily be afforded an opportunity to explain his actions before” we find
the attorney’s performance was ineffective.  Goodspeed, 187 S.W.3d at 392; Rylander
v. State, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); Fox, 175 S.W.3d at 485–86. 
Absent such opportunity, we will not find deficient performance unless
the challenged conduct was “so outrageous that no competent attorney would have
engaged in it.”  Goodspeed, 187 S.W.3d at 392; Fox, 175 S.W.3d at 486.  For this reason, direct appeal is usually an
inadequate vehicle for raising such a claim because the record is generally
undeveloped. Thompson, 9 S.W.3d at
813–14; Fox, 175 S.W.3d at 485.  

            We evaluate Morris’s
ineffective assistance of counsel claims using the two-part Strickland test formulated by the United
States Supreme Court, which requires a showing of both deficient performance
and resulting prejudice.  Strickland v. Washington, 466 U.S. 668,
687–88 (1984); Thompson, 9 S.W.3d at
812; Fox, 175 S.W.3d at 485.  Under the first prong of the Strickland test, Morris must show that
his counsel’s representation fell below an objective standard of
reasonableness.  Fox, 175 S.W.3d at 485 (citing Tong
v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)).  There is a strong presumption that counsel’s
conduct fell within the wide range of reasonable professional assistance and
that the challenged action could be considered sound trial strategy.  Strickland, 466 U.S. at 689; Ex
parte White, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong, 25 S.W.3d at 712.  Therefore, we will not second guess the
strategy of Morris’s counsel through hindsight. 
Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Hall
v. State, 161 S.W.3d
142, 152 (Tex. App.—Texarkana 2005, pet. ref’d).  In this case, since the record is silent as
to why counsel failed to object to Bond’s inclusion on the jury, Reed’s
exclusion from the jury, and the court’s allegedly improper comments on Morris’s
failure to testify and present mitigating evidence, we will assume it was due
to any strategic motivation that can be imagined.  Mata v. State, 226 S.W.3d 425, 431
(Tex. Crim. App. 2007); Garcia v. State, 57 S.W.3d 436, 441 (Tex.
Crim. App. 2001); Fox, 175 S.W.3d at 485–86. 

            The
second Strickland prong requires a
showing that the deficient performance prejudiced the defense to the degree
that there is a reasonable probability that, but for the attorney’s deficiency,
the result of the trial would have been different.  Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712.  A reasonable probability “is a
probability sufficient to undermine confidence in the outcome.”  Mitchell v. State, 68 S.W.3d 640, 642
(Tex. Crim. App. 2002).  Failure to satisfy either prong of the Strickland
test is fatal.  Ex parte Martinez,
195 S.W.3d 713, 730 (Tex. Crim. App. 2006). 


            B.        Failure to Object to Jury
Selection 

            There
is no record explaining counsel’s reasons for failing to object to Bond’s
inclusion and Reed’s exclusion from the jury panel.  Counsel’s peremptory strike lists Bond’s
name, but incorrectly cites his juror number as Reed’s juror number.  Thus, it is possible counsel’s intention was
to strike Reed and keep Bond on the jury panel. 
Absent a record demonstrating otherwise, we apply the strong presumption
that counsel’s conduct fell within the wide range of reasonable professional
assistance.  Strickland, 466 U.S.
at 689; White, 160 S.W.3d at 51; Tong, 25 S.W.3d at 712.  

            Morris
attempts to meet the second Strickland prong
by arguing that since Reed believed in rehabilitation punishment theory (second
theory), and Bond believed in punishing a defendant to send a message (third
theory), his sentence would have been less severe if Reed had been seated on
the jury instead of Bond.  Yet, the
makeup of the final jury consisted of four jurors who believed in the third
theory of punishment and two jurors who believed in the second theory of
punishment. Placing Reed on the jury would have led to an equal amount of
jurors believing in the second and third punishment theories.  In any event, the remaining majority of
jurors believed in the first theory of punishment—prevention of further
crime.  Given the evidence in this case
and the fact that jurors representing all three theories of punishment rendered
a unanimous verdict as to sentencing as instructed by the trial court’s charge,
Morris cannot demonstrate with reasonable probability that the result of
the trial would have been different absent his counsel’s alleged error. 

C.        Failure
to Object to Trial Court’s Allegedly Improper Comment on Failure to Testify and
Present Mitigating Evidence

 

            Finally,
Morris argues that his counsel was ineffective for having failed to
lodge an objection to the trial court’s instruction to Morris in the presence
of the jury that he had the right to remain silent and the right to present
mitigating evidence.  It is possible that
counsel believed that the court’s comments favorably aided in explaining to the
jury that Morris was neither required to testify nor present mitigating
evidence.  Alternatively, even if counsel
believed the trial court’s comment was damaging, counsel may have taken the
position that to lodge an objection would have served little purpose except to
draw the jury’s attention to Morris’s failure to testify or the lack of
mitigating evidence, thereby magnifying its significance.  Again, absent a record containing counsel’s
explanations, we will not find deficient performance since the failure to
object in this circumstance was not “so outrageous that no competent attorney
would have engaged in it.” Goodspeed, 187 S.W.3d at 392; Fox,
175 S.W.3d at 486.  

            Moreover,
the jury charge instructed the jury not to consider Morris’s failure to testify
and to only consider facts in evidence.  Absent evidence to the contrary, we will
presume that the jury followed the trial court’s instructions in the
charge.  See Reynolds v. State, 227 S.W.3d 355, 367 (Tex. App.—Texarkana
2007, no pet.).  Thus, because the jury
presumably followed the charge, Morris is unable to demonstrate the result of
the trial would have been different absent trial counsel’s alleged error. 

IV.       Conclusion


            We
affirm the judgment of the trial court.  

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          April 14, 2010

Date Decided:             April 23, 2010

 

Do Not
Publish











[1]Laboratory
reports found 1.14 grams and 1.56 grams of cocaine were contained in the
deliveries.  

 





[2]Batson v. Kentucky, 476 U.S. 79 (1986). 





[3]A
“defendant who raises a Batson claim at trial forfeits his opportunity
to complain on appeal about what his response to the State’s race neutral
reasons would have been when he fails to timely present his evidence in
rebuttal of the State’s race neutral reasons.” 
Hill v. State, No.
10-03-00281-CR, 2005 WL 170552, at *1 (Tex. App.––Waco Jan. 26, 2005, pet. ref’d)
(mem. op., not designated for publication). 






[4]Morris
concedes that the trial court was taking up challenges for cause during the
bench conference, a portion of which was recorded by the reporter.  The Batson
challenge was made after the bench conference, which was fully recorded and
preserved for our review.  Since Morris
has not proffered a point of error dealing with challenges for cause, we have
not been shown how the omitted portion of the bench conference would hinder our
review of this appeal. 

 





[5]Morris
challenges that Rule 34.6 of the Texas Rules of Appellate Procedure entitles
him to a new trial if a significant portion of the reporter’s record is lost or
destroyed.  Tex. R.
App. P. 34.6.  As Jones discusses, since the record was
never created, this Rule will not apply. 
942 S.W.2d 1, 2. 








the fraudulent lien statute.  At most,
it creates a genuine issue of material fact for a jury’s resolution.  

            Section 51.901(c) of the
Texas Government Code provides that “[f]or purposes of this section” a document
or instrument “is presumed to be fraudulent” if:

[T]he
document or instrument purports to create a lien or assert a claim against real
or personal property or an interest in real or personal property and: 

 

            . . . .

 

(B) is not
created by implied or express consent or agreement of the obligor, debtor, or
the owner of the real or personal property or an interest in the real or
personal property, if required under the laws of this state, or by implied or
express consent or agreement of an agent, fiduciary, or other representative of
that person.

 

Tex. Gov’t Code Ann. § 51.901(c)(2)(B) (Vernon Supp. 2009). 


            As a final attempt at
meeting the statutory requirements of Section 12.002, Roberts suggests that
this Court should apply the Government Code presumptions.  Roberts’ argument is based on a reference to
this Government Code section in Section 12.006 of the Texas Civil Practice and
Remedies Code, which discusses awarding plaintiffs costs of suit.  Our sister court has rejected Roberts’
suggested application.  Centurion Planning Corp., 176 S.W.3d at
507.  The court in Centurion reasoned that the Legislature did not define fraudulent
lien in the Texas Civil Practice and Remedies Code, and could have easily
referred to Section 51.091.  Id.  In
its reasoning, the court pointed out that the Texas Government Code did not
define fraudulent lien, but rather established presumptions which would apply
under certain circumstances.  Id.  As our sister court did in Centurion, we decline to extend
application of the Government Code presumptions to Section 12.002.  Moreover, a plain reading of Section 12.002
suggests that even should this Court apply the Government Code presumption, it
would only aid Roberts with respect to the first element of the fraudulent lien
statute.  In other words, evidence of
intent as a matter of law would still be required. 

            Because there was a fact
question on the issue of Walker’s knowledge that the document was a fraudulent
lien and the intent to cause financial harm, we reverse the trial court’s
fraudulent lien summary judgment against WAS and remand for trial on the
merits. 

            C.        Usurious Interest Award Under Section
305.004 Was Error 

            Section 305.004 provides
for additional monetary damage if a creditor charges and receives more than twice the legal rate of interest.  Tex.
Fin. Code Ann. § 305.004 (Vernon 2006).  Compare
with § 305.003 (states creditor liable if he or she “charges or receives”
usurious interest).  Because there is no
summary judgment evidence demonstrating WAS received any interest payments, we
hold that granting summary judgment for usurious interest under Section 305.004
of the Texas Finance Code was error.  See C&K
Invs. v. Fiesta Group, Inc., 248 S.W.3d 234, 250–51 (Tex. App.—Houston [1st
Dist.] 2007, no pet.); Aguilar v.
Anderson, 855 S.W.2d 799, 803 (Tex. App.—El Paso 1993, writ denied) (citing
Cook v. Frazier, 765 S.W.2d 546, 553
(Tex. App.—Fort Worth 1989, no writ)).  

            The trial court’s
summary judgment based on Section 305.004 and the applicable attorney’s fee
award are reversed and remanded for trial on the merits.[10]


            D.        While
Roberts Established Elements of Usury Under Section 305.003, Damage                             Fact Questions Remained


 

            WAS claims the essential
elements of usury were not shown.  The
essential elements of a usurious transaction are:  “(1) a loan of money, (2) an absolute
obligation to repay the principal, and (3) the exaction of a greater
compensation than allowed by law for the use of the money by the borrower.”  First
Bank v. Tony’s Tortilla Factory, Inc., 877 S.W.2d 285, 287 (Tex.
1994).  The Texas Finance Code defines
the term “loan” as “an advance of money that is made to or on behalf of an
obligor, the principal amount of which the obligor has an obligation to pay the
creditor,” and an “obligor” is “a person to whom money is loaned or credit is
otherwise extended.”  Tex. Fin. Code Ann. § 301.002(a)(10), (13)
(Vernon 2006).  A “creditor” is “a person
who loans money or otherwise extends credit.” 
See Tex. Fin. Code Ann. § 301.002(a)(3) (Vernon 2006).  

                                    1.         A loan of money

            WAS argues that Roberts
did not establish a loan of money as a matter of law.  This argument was addressed and rejected in 271 Truck Repair & Parts, Inc. v. First
Air Express, Inc., which “conclude[d] that the . . . plain meaning of “creditor”
includes suppliers of goods or services when they charge interest on past due
amounts.”  No. 03-07-00498-CV, 2008 WL
2387630, at *9 (Tex. App.—Austin June 11, 2008, no pet.) (mem. op.).  In its reasoning, 271 Truck Repair cited 
several Texas cases holding that suppliers of goods or services charged
usurious interest rates.  Id. (citing Strasburger Enters., Inc. v. TDGT Ltd. P’ship, 110 S.W.3d 566, 574
(Tex. App.—Austin 2003, no pet.); William
C. Dear & Assocs., Inc. v. Plastronics, Inc., 913 S.W.2d 251, 253–54
(Tex. App.—Amarillo 1996, writ denied) (usury violation based on interest
charged in invoice for investigatory services); Douglas Electronics, Inc. v. Pinnacle Sys., Inc., 805 S.W.2d 852,
856–57 (Tex. App.—Corpus Christi 1991, no writ); Commerce, Crowdus & Canton, Ltd. v. DKS Constr., Inc., 776
S.W.2d 615, 616–18 (Tex. App.—Dallas 1989, no writ) (applied usury statutes to
extension of credit under construction contracts)).  Similarly, we find WAS to be a creditor
because services were supplied and interest was charged on past due
amounts.  See Broady v. Johnson,
763 S.W.2d 832, 834 (Tex. App.—Texarkana 1988, no pet.) (landowner charged
usurious interest on contract for service allowing cattle to be pastured on his
land). 

                                    2.        An
absolute obligation to repay the principal

             WAS filed a suit on sworn account stating
Roberts was “bound to pay Plaintiff its designated price.”  Walker signed an affidavit in which he stated
that “$25,148.73 [was] due and payable,” implying an obligation to repay the
principal balance.  Nevertheless, WAS
next asserts that even if it can be considered a creditor, there was no
absolute obligation that the principal be repaid.  

            In rejecting this
argument, we note that courts have found usury statutes applicable to open
accounts because they extend credit from the date of purchase to the date of
payment, which is expected to be repaid. 
Domizio v. Progressive County Mut.
Ins. Co., 54 S.W.3d 867, 874 (Tex. App.—Austin 2001, pet. denied) (“The
normal loan transaction involves credit, and in an open account transaction,
credit is extended from the date of purchase to the date of payment.  A violation of the usury statute in those
cases results from a credit transaction.”); Commerce,
Crowdus & Canton, 776 S.W.2d at 616–18; Potomac Leasing Co. v. Housing Auth. of City of El Paso, 743
S.W.2d 712, 713 (Tex. App.—El Paso 1988, writ denied) (“Under the open account
transaction, credit is extended from the date of purchase to the date of
payment.”).  This theory is consistent
with holdings in cases where invoices for services rendered in connection with
a contract supported the trial court judgments finding usury violations.  William
C. Dear & Assocs., 913 S.W.2d at 253–54; Douglas Electronics, Inc., 805 S.W.2d at 856—57; Commerce,
Crowdus & Canton, 776 S.W.2d at 616–18; Broady, 763 S.W.2d at 834.  

            Thus, we conclude WAS “otherwise
extended credit” to Roberts amounting to an absolute obligation by Roberts to
repay the principal.  Tex. Fin. Code Ann. § 301.002(a)(3).  This element has been met. 




 

                                    3.         Exaction
of greater compensation than allowed by law

            Next, we address whether
Roberts was charged interest in an amount greater than allowed by law.  Section 302.002 of the Texas Finance Code
states, “[i]f a creditor has not agreed with an obligor to charge the obligor
any interest, the creditor may charge and receive from the obligor legal
interest at the rate of six percent a year.”  Tex.
Fin. Code Ann. § 302.002 (Vernon 2006).  
Here, as per Walker’s admission, since there was no contract with WAS
establishing the interest rate, “the statutory rate of six percent [was] read
into the agreement and bec[ame] the maximum rate allowed on the transaction.”  All
Seasons Window & Door Mfg. v. Red Dot Corp., 181 S.W.3d 490, 497 (Tex.
App.—Texarkana 2005, no pet.); Broady,
763 S.W.2d at 834.  

            Walker cites this Court
to the Prompt Payment Act in Sections 28.002 and 28.004 of the Texas Property
Code to support his argument that the Act legally allowed 1.5 percent to be
charged each month.  See Tex. Prop. Code Ann.
§§ 28.002, 28.004 (Vernon 2000).  That statute
allows a contractor to require payment for an amount “that is allowed to the
contractor under the contract for properly performed work . . . .”  An unpaid invoice bears interest at 1-1/2 percent
a month.  Id.  Here, WAS billed Roberts
for $22,940.00, an amount not due and owing to it.  Thereafter, WAS added late charges and
interest of 1-1/2 percent monthly. 
Accordingly, the Prompt Payment Act is inapplicable to WAS in this
instance.   

            “A creditor who charges
or receives legal interest” greater than six percent per annum “is liable to
the obligor.”   Tex. Fin. Code Ann. § 305.003 (Vernon 2006).  It is undisputed that WAS charged more than
the six percent maximum rate allowed. 
Thus, Roberts met its burden to prove interest charged by WAS was
usurious under Section 305.003.  

            E.        WAS Did Not Cure This Usurious Interest
Violation 

            The applicable statute
regarding cure states:

With
respect to a defendant filing a counterclaim action alleging usurious interest
in an original action by the creditor, the defendant shall provide notice[11]
complying with Subsection (b) at the time of filing the counterclaim and, on
application of the creditor to the court, the action is subject to abatement
for a period of 60 days from the date of the court order. During the abatement
period the creditor may correct a violation. As part of the correction of the violation, the creditor shall offer to
pay the obligor’s reasonable attorney’s fees as determined by the court
based on the hours reasonably expended by the obligor’s counsel with regard to
the alleged violation before the abatement. A creditor who corrects a violation
as provided by this subsection is not liable to an obligor for the violation.[12]  

 

Tex. Fin. Code Ann. § 305.006(d) (Vernon 2006) (emphasis added).

            WAS argues that the
usurious interest charges were cured because it only prayed for the principal
balance in its pleadings, and it produced a document evidencing some sort of
credit to Roberts for the purported usurious interest after Roberts’ partial
motion for summary judgment was filed.  It
relies on a single case from the Fifth Circuit to support this position, In re CPDC, Inc., 337 F.3d 436 (5th Cir.
2003).  In CPDC, the court decided that a pre-suit notice sent by the
creditor, which informed the debtor that the interest it charged was usurious
and renegotiated the interest, renounced any right to receive usurious interest
and was thus sufficient to cure the violation. 
Id. at 439, 446.  Importantly, the court’s opinion was based on
Section 305.103 of the Texas Finance Code, which states:

(a) A creditor is not liable to an obligor for a violation of this
subtitle if:

(1) not
later than the 60th day after the date the creditor actually discovered the
violation, the creditor corrects the violation as to that obligor by taking any
necessary action and making any necessary adjustment, including the payment of
interest on a refund, if any, at the applicable rate provided for in the
contract of the parties; and

 

(2) the creditor gives written notice to the
obligor of the violation before the obligor gives written notice of the
violation or files an action alleging the violation.

 

Tex. Fin. Code Ann. § 305.103 (Vernon 2006) (emphasis added). 


            This statute, addressing
pre-suit cure, does not apply to this case because WAS did not give Roberts
notice of the usury violation first, and the attempted cure came only after the
filing of suit.  By failing to offer to
pay Roberts’ attorney’s fees, WAS failed to comply with post-suit cure statute Section
305.006(d).  Bair Chase Prop. Co., 260
S.W.3d at 143 n.6 (distinguishing Pagel
v. Whatley, 82 S.W.3d 571 (Tex. App.—Corpus Christi 2002, pet. denied),
held creditor cured usury violation by deleting charges of interest and making
demand for principal only because it was based on Section 305.103);[13]
Strasburger Enters., Inc., 110 S.W.3d
at 577 (holding under Section 305.103 that “a pleading alone is insufficient to
serve as a notice to correct a usurious violation when not delivered to the
obligor before the obligor communicates notice of a violation to the creditor”).


            F.        There Are Fact Questions Regarding the
Trial Court’s Usurious Interest Award 

            The trial court awarded
a total of $8,385.60 for alleged
violations of Sections 305.003 and 305.004, but erred in granting
summary judgment under Section 305.004. 
Therefore, in accordance with Section 305.003, WAS was liable to Roberts only for an amount “equal to the
greater of:  (1) three times the amount
computed by subtracting the amount of legal interest allowed by law from the
total amount of interest charged or received; or (2) $2,000.00 or twenty
percent of the amount of the principal, whichever is less.”  Tex.
Fin. Code Ann. § 305.003. 

            The
legal interest is simple to calculate.  The
trial court determined, with support from WAS invoices presented during summary
judgment, that “the principal amount on which the interest [was] charged and
received” was $1,979.76.  Twenty percent
of this principal amount is $395.95. 
However, interest charged presents an issue of fact. 

            It
appears that the trial court relied on a summary prepared by Roberts as to the
amount of interest charged indicating the total finance and interest charges
was $1,750.95.  The summary adds late
fees assessed at $35.00 per month.  WAS
contends it was error for the trial court to include late fees into the damage
calculation.  We disagree.[14]  Several Texas courts have held that late fees
without contractual right to charge them are considered usurious interest.  Seiter
v. Veytia, 756 S.W.2d 303, 305 (Tex. 1988) (citing Dixon v. Brooks, 604 S.W.2d 330, 333 (Tex. Civ. App.—Houston [14th
Dist.] 1980, writ ref’d n.r.e.) (reasoning late charge is “compensation for the
. . . detention of money” under Section 301.002(4) and is therefore interest); Windhorst v. Adcock Pipe & Supply,
547 S.W.2d 260, 260–61
(Tex. 1977) (holding finance charge on open account was interest); Watson v. Cargill, Inc., Nutrena Div.,
573 S.W.2d 35, 42 (Tex. Civ. App.—Waco 1978, writ ref’d n.r.e.)).[15]  Thus, the trial court was authorized to include
the late fees into the damage calculation. 

            However,
Roberts’ summary showing that the total amount charged for interest and late
fees was $1,750.95 presents a fact question. 
The invoices sent by WAS to Roberts are in the record.   Beginning on July 30, 2004, late fees
(finance charge) and interest were charged to Roberts beginning on a monthly
basis.  From July until December 2004,
WAS sent a monthly statement to Roberts for a $35.00 late charge and an
additional amount for interest.   In
2005, it appears no statement was sent until December 30, 2005, at which time a
statement for $630.00 was sent for a late charge for eighteen units (months) at
$35.00 per unit.  Likewise, on the same
date a statement was sent for $505.01 as finance charges on the overdue
balance.  Both of these December
statements appear to include all interest and late charges to that date.  However, the summary presented by Roberts
calculates the total amount of interest charged, including late fees, to
include each of the monthly charges in 2004 and also the summarized balance as
noted in the December 2005 statements. 
If that is correct, the 2004 charges were included twice.  The factual dispute is further demonstrated
by a final WAS invoice suggesting that the total amount of late fees and
interest charged was actually $1,521.98. 
$1,521.98 is the result of $1,750.95 less the additional 2004 charges
listed on the summary.  

            So
it appears a fact question exists as to whether the 2004 charges for interest
and late fees were included twice as the interest charged in calculating
damages.    

              We would modify the judgment and calculate
the correct amount if the evidence established conclusively that a double
recovery for 2004 interest was had. 
However, our observations merely present a fact issue which precluded
summary judgment.  Thus, we remand the
issue of amount of damage to be awarded. 

III.      Admission of the Thacker
Statements Was Proper            

            The
Thacker statements read, “I . . . was told on different occasions to put 3 ft
of clay base on the racetrack by . . . Dennis Walker and this is what was
agreed to by Dennis Walker and Royce Roberts.”  
“Hearsay included within hearsay is not excluded under the hearsay rule
if each part of the combined statements conforms with an exception to the
hearsay rule.”  Tex. R. Evid. 805.  The
Walker Group contends the trial court erred in failing to sustain their
objection that the Thacker statements contain hearsay within hearsay.  However, according to Texas Rule of Evidence
801, the statements are nonhearsay within nonhearsay.

                   The admission or exclusion of
evidence is a matter within the sound discretion of the trial court.  Daniels v. Yancey, 175 S.W.3d 889, 895
(Tex. App.—Texarkana 2005, no pet.) (citing City of Brownsville v. Alvarado,
897 S.W.2d 750, 753 (Tex. 1995)).  Thus,
we review the admission of the Thacker statements for abuse of discretion.  Id. 
A trial court abuses its discretion when it acts without regard for
any guiding rules or principles.  Holtzman
v. Holtzman, 993 S.W.2d 729, 734 (Tex. App.—Texarkana 1999, pet. denied)
(citing Downer v. Aquamarine Operators, 701 S.W.2d 238 (Tex. 1985)).

            Hearsay
“is a statement, other than one made by the declarant while testifying at the
trial or hearing, offered in evidence to prove the truth of the matter
asserted.”  Tex. R. Evid. 801(d). 
Declarations of third persons may be binding on a party as vicarious
admissions when made by the party’s agent or servant concerning a matter within
the scope of the agency or employment and made during the existence of the
relationship.  35 Tex. Jur. 3d Evidence
§§ 232, 234 (2008).   Thacker’s statement
is such a declaration.  A “statement by
the party’s agent or servant concerning a matter within the scope of his or her
agency or employment, made during the existence of the relationship” is
considered to be an admission by a party opponent and is not hearsay.  Tex.
R. Evid. 801(e)(2)(D).  David
Thacker was WAC’s foreman and supervisor. 
Allen Thacker was the equipment operator.  Both Thackers were employed by the Walker
Group and were authorized to discuss the job requirements, including the amount
of clay needed on the track, with Roberts and Richey.  The trial court was justified in its implied
finding that the statements made by the Thackers, that they were “told on
different occasions to put three feet of clay base,” “this is what was agreed
to by Dennis Walker and Royce Roberts,” they were told on November 4, 2004, “to
pick up all . . . equipment and leave,” and that Walker “was not putting over
one foot of clay on track,” were matters within the scope of their employment
and were made during the existence of their employment relationship with
Walker.  See Southmark Mgmt. Corp. v.
Vick, 692 S.W.2d 157, 160 (Tex. App.—Houston [1st Dist.] 1985, writ ref’d
n.r.e.).

             Further, any statement by a party opponent is
admissible against that party.  Bay Area Healthcare Group, Ltd. v. McShane,
239 S.W.3d 231, 235 (Tex. 2007).  The
Thacker statement implies that Walker told Thacker to put down three feet of
clay.  This would be an admission by
party opponent since the statements were being offered by Roberts.  See
Trencor, Inc. v. Cornech Mach. Co.,
115 S.W.3d 145, 151–52
(Tex. App.—Fort Worth 2003, pet. denied). 
Thus, the trial court correctly determined the Thacker statements were
not hearsay.   

IV.      Legally and Factually
Sufficient Evidence Supported the Jury Verdict

            A
jury was empanelled to determine the remaining issues.  The test for legal sufficiency
is “whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review.” 
Hooper v. Smallwood, 270 S.W.3d 234, 240 (Tex. App.—Texarkana
2008, pet. denied) (citing City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005)).  In making this
determination, we credit favorable evidence that could be found by a reasonable
juror and disregard contrary evidence unless a reasonable juror could not.  Id.  As long as the evidence falls within the zone
of reasonable disagreement, we will not substitute our judgment for that of the
juror.  Id.  Although we consider the evidence in a light
most favorable to the challenged findings, indulging every reasonable inference
that supports them, we will not disregard evidence that allows only one
inference.  Id.

            Since
the Walker Group attacked the factual sufficiency of the jury’s verdict, based
upon its failure to find WAC substantially performed under the contract as
alleged in its amended petition, they must now demonstrate that the adverse
finding was against the great weight and preponderance of the evidence.  Id. (citing Dow Chem. Co. v. Francis,
46 S.W.3d 237, 242 (Tex. 2001); In re Estate of Steed, 152 S.W.3d 797,
806 (Tex. App.—Texarkana 2004, pet. denied)). 
In conducting our review of this issue, we consider and weigh all of the
evidence and set aside a verdict only if the evidence is so weak or if the finding
is so against the great weight and preponderance of the evidence that it is
clearly wrong and unjust.  Id.
(citing Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986); Steed, 152 S.W.3d at 806). 
We also keep in mind that the jury was the sole judge of the credibility
of the witnesses and the weight to be given their testimony.  Id. (citing Golden Eagle Archery,
Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003)). 

            The
jury found that WAC failed to comply with the construction agreement, while
Roberts did comply.  The contract simply
provided that Roberts would pay the lump sum price of $57,250.00 to WAC “to
construct a 7/8 mile Horse Track . . . as per [Roberts’] instructions.”  It is undisputed that WAC did not complete
the racetrack and that Walker ordered the Thackers to abandon the job.   This would enable a reasonable and
fair-minded jury to reach the conclusion that WAC breached the agreement.  The primary dispute of the parties was the
requirement of three feet of clay as a base. 
This issue was contested and a fact issue was presented to the jury,
which it resolved in Roberts’ favor. 
Combined with the wording of the contract implying payment conditioned
upon performance per Roberts’ instructions, and evidence tending to show three
feet of clay was required, we conclude the evidence was not so weak or the
finding so against the great weight and preponderance of the evidence that it
was clearly wrong and unjust.  

            The
Walker Group also argued the evidence was insufficient to support the jury
finding that WAC did not substantially perform the contract.  At best, Walker stated he believed fifty
percent of the work was completed.  This
testimony was countered by Roberts’ and Richey’s testimony explaining that the
track was under grade when left and that the track had to be re-tilled since
Walker tilled the vegetation into the soil.  
Roberts also testified that it took a substantial amount of time and
money to complete the project.  Again,
uncontroverted evidence established the Walker Group walked out on the job,
supporting a finding that they did not intend to comply with the contract in
good faith.  We conclude the evidence was
legally and factually sufficient to sustain the jury’s finding that WAC did not
substantially perform the contract.[16] 

V.       The Trial Court Did Not Err
in Denying Walker’s Requested Jury Instruction

            An instruction is proper if it might assist the
jury in answering the submitted questions, accurately states the law, and finds
support in the pleadings and evidence.  Tex. R. Civ. P. 277; Elbaor v. Smith,
845 S.W.2d 240, 243 (Tex. 1992); Wal-Mart Stores, Inc. v. Middleton, 982 S.W.2d 468, 470 (Tex. App.—San
Antonio 1998, pet. denied); La. & Ark. Ry. Co. v. Blakely, 773 S.W.2d 595, 598 (Tex.
App.—Texarkana 1989, writ denied).  A
trial court is afforded more discretion when submitting instructions than when
submitting questions.  Middleton, 982 S.W.2d at 470.
 Since the trial court has considerable discretion to determine necessary
and proper jury instructions, we review a trial court’s decision to refuse a
particular instruction under an abuse of discretion standard.  Shupe v. Lingafelter, 192 S.W.3d 577, 579 (Tex.
2006); In re V.L.K., 24
S.W.3d 338, 341 (Tex. 2000); La. & Ark. Ry., 773 S.W.2d at 598.  An
abuse of discretion occurs where a trial court acts arbitrarily, unreasonably,
without consideration of guiding principles, or clearly fails to analyze or
apply the law correctly. Middleton,
982 S.W.2d at 469; Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); Downer, 701
S.W.2d at 241–42.  When a trial court refuses to submit a
requested instruction on an issue raised by the pleadings and evidence, we
first determine if the instruction was reasonably necessary to enable the jury
to render a proper verdict.  Shupe, 192 S.W.3d at 579; Tex. Workers’ Comp. Ins. Fund v. Mandlbauer,
34 S.W.3d 909, 912 (Tex. 2000) (referring to Texas Rules of Civil Procedure 277
and 278).                

            WAC
asked the trial court to submit the following instruction along with the breach
of contract question:  “The Court has
determined that the contract between the parties does not require Walker &
Associates Construction to include a clay base three feet deep in constructing
the horse track.”  In submitting the
issue of breach to the jury, the trial court impliedly found that the issue of
whether three feet of clay was necessary was a disputed fact and therefore
required a jury determination.  As
written, the instruction would not assist the jury, but would be a determination
as a matter of law on a disputed fact question. 
We conclude the trial court did not abuse its discretion in denying the
proposed instruction.  

VI.      The Trial Court Did Not Err in Awarding Damages Based on Quantum
Meruit

            The
jury found that the value of WAC’s compensable work was $13,200.00, and the
trial court granted WAC a judgment against Roberts in that amount.  “As a general rule, a plaintiff who seeks to
recover the reasonable value of services rendered or materials supplied will be
permitted to recover in quantum meruit only when there is no express contract
covering those services or materials.”  Truly
v. Austin, 744 S.W.2d 934, 936 (Tex. 1988). 
There are two exceptions to the general rule.  The first applies where a party partially
performs a contract, but was prevented from completing the contract due to the
other party’s breach.  Id.  This fact situation does not exist here.  Another exception exists when a plaintiff
partially performs a unilateral contract. 
Id. at 937.  In dicta, Truly
stated that Texas courts have allowed a breaching contractor to recover under
quantum meruit where the owner has accepted and retained some benefit as a
result of a contractor’s partial performance. 
Id. (citing City of Sherman v. Connor, 88 Tex. 35, 29 S.W.
1053 (1895); City of Ingleside v. Stewart, 554 S.W.2d 939, 947 (Tex.
Civ. App.—Corpus Christi 1977, writ ref’d n.r.e.)).  

            Roberts
urges this Court to follow the general rule. 
However, another Texas Supreme Court decision reiterates the dicta in Truly
in holding that a breaching contractor can recover under quantum meruit
even where there was no substantial performance under contract.  Murray v. Crest Constr., Inc., 900
S.W.2d 342, 345 (Tex. 1995) (stating construction contracts exception to
general rule); Dobbins v. Redden, 785 S.W.2d 377, 378 (Tex. 1990); 10 Tex. Jur. 3d Building Contracts § 56 (2003); Comm.
on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury
Charges:  Business Consumer Insurance
Employment PJC 101.42, 101.46 (2008).  But see
R.M.Dudley Constr. Co. v. Dawson, 258 S.W.3d 694, 703 (Tex. App.—Waco
2008, pet. denied) (applying general rule in upholding trial court’s denial of
recovery under quantum meruit theory). 
Thus, quantum meruit was available to the Walker Group.  

            “To
recover on a claim for quantum meruit, appellant must show (1) he rendered
valuable services, (2) for appellees, (3) they accepted his services, and (4)
he rendered the services under circumstances as would reasonably notify them
that he expected to be paid.”  Johnson
v. Kruse, 261 S.W.3d 895, 901 (Tex. App.—Dallas 2008, no pet.); Tully v.
Citibank (South Dakota), N.A., 173 S.W.3d 212, 216 (Tex. App.—Texarkana
2005, no pet.).  This was done.  The jury found that WAC performed compensable
work that Roberts knowingly accepted while also knowing that WAC expected
payment.    

            In
arguing that an additional finding of unjust enrichment is necessary, Roberts
quotes Truly as follows:  “to justify a recovery in quantum meruit, the
plaintiff . . . must also show that the defendant has been unjustly enriched
and the plaintiff would be unjustly penalized if the defendant were permitted
to retain the benefits of the partial performance without paying anything in
return.”  Truly, 744 S.W.2d at
938; Dawson, 258 S.W.3d at 702. 
Based on this quote in Truly,
Roberts argues that since findings of unjust enrichment were not included in
the jury questions, the trial court erred in making the award.   In Truly,
the Texas Supreme Court held that the general rule applied—a party may not
recover under quantum meruit when there is an express contract on the
matter.  The further discussion
concerning the exception to the general rule for construction cases, including
the above quote, was dicta since Truly
did not involve a claim for construction completed, but was a claim for
services rendered to a joint venture.  Truly, 744 S.W.2d at 936.  

            The
measure of damages for a quantum meruit claim is the reasonable value of the
work performed.  Johnson, 261 S.W.3d at 902
(citing Lamajak, Inc. v. Frazin, 230 S.W.3d 786, 796 (Tex. App.—Dallas
2007, no pet.)).  The Texas Pattern Jury
Charges, upon which the trial court’s charge was based, indicate that the
measure of damages for quantum meruit is not different in construction
contracts.  Comm. on Pattern Jury Charges, State Bar of Tex., Texas
Pattern Jury Charges: Business Consumer Insurance Employment PJC 101.46,
115.6 (2008).  Well-settled pattern jury
charges should not be embellished with addendum.  Weeks Marine, Inc. v. Salinas, 225 S.W.3d 311, 319 (Tex.
App.—San Antonio 2007, pet. dism’d). 
What constitutes a reasonable compensation for benefits furnished does
not depend on any single factor, but takes into account all the evidence and
circumstances.  See 64 Tex. Jur. 3d Restitution Etc. § 34 (2009).  

            The
more recent Texas Supreme Court opinion in Murray
specifically authorized a recovery on the theory of quantum meruit based on
jury questions that were precisely the same as in this case.  Murray
v. Crest Constr., Inc., 900 S.W.2d 342 (Tex. 1995).  The jury question was: “Did Murray perform
compensable work for Crest on the Borden and Cooper Jobs?”  Crest
Constr. v. Murray, 888 S.W.2d 931, 952 (Tex. App.—Beaumont 1994), rev’d, 900 S.W.2d 342 (Tex. 1995).  The definition of compensable work is exactly
the same as the jury instruction here.  Id.  The appellate court recognized “this is a
submission on the quantum meruit theory of recovery,” but held quantum meruit
was unavailable because an express contract covered services provided by
Murray, and the contract price was stipulated. 
Id.  The Texas Supreme Court reversed, and based on
those jury findings, held: 

Generally, a party may not recover under quantum
meruit when there is an express contract covering the services or materials
furnished.  [citing Truly]  Construction
contracts are an exception to this rule. 
It is undisputed that Murray has failed to substantially perform the
Borden and Cooper jobs, a condition precedent to recovery under the express
contract.  Murray may bring an action in
quantum meruit to recover the      amount
of benefits conferred by its partial performance on to Crest.  

 

Murray, 900 S.W.2d at 345. 
Importantly, the Texas Supreme Court did not require any further finding
of unjust enrichment in Murray.  We believe Murray provides the authority for a recovery in quantum meruit in
this case.  

            Roberts
cites our language in Box v. Au Forgeron de la Court-Dieu, Inc., stating:  

Recovery in quantum meruit, when the work has not
been done in a good and workmanlike manner, is limited to the market value of
the work as done less the cost of remedying the defects. 

 

708 S.W.2d 538, 541 (Tex.
App.—Texarkana 1986, writ ref’d n.r.e) (citations omitted).  Box involved
a case in which the jury expressly determined that the work was not done in a
good and workmanlike manner.  Because no
such finding was submitted to the jury in this case, and we do not assume such
a finding given the jury’s belief that Walker performed compensable work, Box is inapplicable. 

VII.    The
Trial Court Did Not Err in Refusing to Award Walker Construction Eighteen   Percent Interest

 

If an owner . . . receives a written payment
request from a contractor for an amount that is allowed to the contractor under
the contract for properly performed work . . .  the owner shall pay the amount to the
contractor . . . not later than the 35th day after the date the owner receives
the request.

 

Tex.
Prop. Code Ann. § 28.002 (Vernon 2000). 
“An unpaid amount required under this chapter begins to accrue interest
on the day after the date on which the payment becomes due . . . An unpaid
amount bears interest at the rate of 1 1/2 percent each month.”  Tex.
Prop. Code Ann. § 28.004 (Vernon 2000).  WAC relies on the Prompt Payment Act to
suggest that eighteen percent prejudgment and post-judgment interest should
have been awarded on its unjust enrichment recovery.  Tex.
Prop. Code Ann. §§ 28.002, 28.004.  

            “As
a prerequisite to presenting a complaint for appellate review, the record must
show that:  (1) the complaint was made to
the trial court by a timely request, objection, or motion.”  Tex.
R. App. P. 33.1.  Judicial economy
requires that a trial court have the opportunity to correct an error before an
appeal proceeds.  In re C.O.S.,
988 S.W.2d 760, 765 (Tex. 1999).  A
motion for new trial, motion to modify or limit judgment, or exception to the
judgment provides the trial court with such an opportunity.  Gerdes v. Kennamer, 155 S.W.3d 523,
532 (Tex. App.—Corpus Christi 2004, pet. denied); William S. Baker, Inc. v. Sims,
589 S.W.2d 492, 493 (Tex. Civ. App.—Dallas 1979, writ ref’d n.r.e.).   

            Here,
the Walker Group did not apprise the trial court of its complaint requesting
eighteen percent interest in the motion for new trial.  It also failed to file a motion to amend or
modify judgment, or otherwise inform the trial court of the complaints.  See
Hyde-Way, Inc. v. Davis, No. 2-08-313-CV, 2009 WL 2462438, at *10 (Tex.
App.—Fort Worth Aug. 13, 2009, no pet.) (mem. op.).  Thus, the Walker Group has waived this point
of error on appeal.  Bushell v. Dean,
803 S.W.2d 711, 712 (Tex. 1991).[17]  

VIII.   Conclusion 

            We
affirm the portion of the trial court’s summary judgment finding interest
charged by WAS usurious under Section 305.003 of the Texas Finance Code.  However, we remand the issue of damages and
attorney’s fees awarded under this section for further proceedings consistent
with our opinion. The trial court’s award of summary judgment with respect to
fraudulent lien claims and associated attorney’s fees is reversed and
remanded.  Claims made under Section
305.004 of the Texas Finance Code, and their associated attorney’s fee awards
are reversed and judgment is rendered that Roberts take nothing on that
claim.  Otherwise, the judgment is
affirmed.

 

                                                

                                                                                    Jack Carter

                                                                                    Justice

 

Date Submitted:          January
13, 2010

Date Decided:             February
26, 2010

 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann.
§ 73.001 (Vernon 2005).  We are unaware
of any conflict between precedent of the Twelfth Court of Appeals and that of
this Court on any relevant issue.  See Tex.
R. App. P. 41.3.





[2]The survey was done by WAS.  There was no separate contract with WAS for
the field survey.





[3]Roberts decided to widen the track from
thirty feet to forty feet.  Although he
recognized that part of the work was due to widening of the track not
contemplated under WAC’s contract and inclusion of a rail and chute, Roberts
testified the total price for the other contractor to complete the track was
$85,345.70.  





[4]Walker
testified the affidavit “should say Walker & Associates Construction.” 

 





[5]WAS
had done survey work before this time. 

 





[6]The
record contains a summary judgment granted in WAS’s favor on its suit on sworn
account.  This summary judgment has no
bearing on this Court’s opinion.  The
trial court set the motion for hearing on January 23, 2008, but WAS asked to
cancel the hearing.  Nevertheless, the
trial court granted WAS’s motion for summary judgment.  The summary judgment order stated that WAS
had appeared through its attorney of record, while Roberts did not appear.  When the miscommunication regarding the
hearing date was pointed out to the trial court, the summary judgment was set
aside.  





[7]The trial court’s attorney’s fees award was
based on Roberts’ attorney’s testimony stating he had segregated the fees for
the usury and fraudulent liens claims to be only $1,312.50.  





[8]A
person who violates this section is liable to the obligor in an amount which is
the greater of $10,000.00 or the actual damages caused by the violation, along
with court costs, reasonable attorney’s fees, and exemplary damages in an
amount determined by the court.  Tex. Civ. Prac. & Rem. Code Ann. § 12.002(b).
  





[9]Walker testified it was his normal practice
to immediately file a lien and that his office prepared the lien.  This evidence suggests Walker may not have
had intent to cause Roberts financial harm. 





[10]For
this issue to reach a jury, Roberts must present some evidence WAS received a usurious interest payment. 





[11]The
Walker Group complains that the notice sent by Roberts of the usury violation
was untimely.  We need not address this
issue since the Walker Group failed to request an abatement. 

 





[12]As
a matter of first impression, our sister court has held that this remedial
statute applies retroactively.  Bair Chase Prop. Co. v. S & K Dev. Co.,
260 S.W.3d 133, 144 (Tex. App.—Austin 2008, pet. denied).  





[13]The trial court in Bair Chase Property Company issued
an order abating the case for sixty days and required the creditor to pay the
debtor $6,000.00 in attorney’s fees.  260
S.W.3d at 137.  Because the creditor paid
the attorney’s fees and sent a corrective action letter to the debtor, the
court determined the violation of the usury statute was cured.  Id.  





[14]The
Walker Group also questions "[w]hether the charge was due to a mistake or
accident is a . . . genuine issue of material fact."  No evidence raising the issue of mistake or
accident is provided in the record, and we need not address this contention.  





[15]The Walker Group cites this Court to First Bank v. Tony’s Tortilla Factory, Inc.,
for the proposition that late fees are not usurious interest.  In First
Bank, the court held that an insufficient fund fee was not interest because
it was a service charge constituting separate and additional consideration,
other than the lending of money, for processing each bad check.  Id. at
287.  In other words, the Bank’s consideration
was not lending money, but rather, advancing funds to cover the bad check.  Id.
at 288.  In its opinion, First Bank cited several cases holding
that attorney’s fees, commitment fees, prepayment penalties, and brokerage fees
were also not considered usurious interest. 
Tex. Commerce Bank v. Goldring,
665 S.W.2d 103, 104 (Tex. 1984); Stedman
v. Georgetown Sav. & Loan Ass’n, 595 S.W.2d 486, 489 (Tex. 1979); Bearden v. Tarrant Sav. Ass'n, 643
S.W.2d 247, 249 (Tex. App.—Fort Worth 1982, writ ref’d n.r.e.); Morris v. Miglicco, 468 S.W.2d 517, 519
(Tex. Civ. App.—Houston [14th Dist.] 1971, writ ref’d n.r.e.).  These
cases holding fees did not constitute interest are distinguishable from this
case because the fees in those cases were “bona fide fees paid to third parties
for servicing late payments” or were contracted for.  Perry
v. Stewart Title Co., 756 F.2d 1197, 1207 (5th Cir. 1985); Goldring, 665 S.W.2d at 104; Stedman, 595 S.W.2d at 489; Bearden, 643 S.W.2d at 248–49; Morris,
468 S.W.2d at 519.    





[16]Also, the above-recited evidence can be used
to conclude it was sufficient for the jury to find Walker’s nonperformance was
not excused by some nonperformance of a material obligation or repudiation by
Roberts.    





[17]Moreover,
the Prompt Payment Act applies only when an obligor under a contract fails to
pay timely in the absence of a good faith dispute.